104 Cal.Rptr.2d 686 (2001)
87 Cal.App.4th 534
AJIDA TECHNOLOGIES, INC., Plaintiff and Respondent,
v.
ROOS INSTRUMENTS, INC., et al., Defendants and Appellants.
No. H020311.
Court of Appeal, Sixth District.
March 1, 2001.
Rehearing Denied March 27, 2001.
Review Denied June 13, 2001.[*]
*689 Michael A. Vacchio, Wendy K. Kilbride, Morgan Lewis & Bockius, for Defendants and Appellants.
Kara M. Andersen, Henry C. Bunsow, Daralyn J. Durie, Keker & Van Nest, San Francisco, for Plaintiff and Respondent.
WUNDERLICH, J.
This is an appeal from a judgment confirming an arbitration award. The appeal rests on a claim that the arbitrators exceeded their authority. At issue are two provisions of the award, both drawn from the parties' terminated agreement and both governing future controversies. The challenged provisions compel further arbitration and permit an award of attorneys' fees in the event of future disputes over the arbitration award. We conclude that the arbitrators acted within the scope of their powers in including the arbitration and fee provisions in the award. We therefore affirm the judgment.

FACTS AND PROCEDURAL HISTORY
The parties to this proceeding are Ajida Technologies, Inc. ("respondent") and Roos Instruments, Inc. and Mark Roos (collectively, "appellant"). This dispute arose out of the parties' 1991 Joint Marketing and Development Agreement ("JMDA" or "the agreement").
The agreement contemplated that appellant and respondent would work together to develop and market a microwave measurement system for testing integrated circuits. Under the terms of the agreement, each party bore equal responsibility for the venture. By the same token, the parties were to share equally in any benefits from the resulting technology, both during the term of the agreement and for five years after its termination. The agreement required the parties to submit disputes to binding arbitration and empowered the arbitrators to determine and award attorneys' fees and costs.
After signing the agreement, the parties began developing a high-speed circuit-testing device, the RI 7100A. The first unit was sold in 1992. As development efforts increased, appellant hired additional employees to work on the project, while respondent contributed the services of two of its employees.
Eventually, disputes arose. Among other things, the parties disagreed about control of the joint venture and about the value of their respective contributions to the project. By September 1997, the parties' relationship had irretrievably broken down. Appellant terminated the agreement and locked respondents' employees out of its facility. Respondent sought arbitration.
As contemplated by the agreement, the parties selected a panel of three arbitrators.[1] *690 The panel commenced a hearing on the parties' claims in March 1998. The following month, the panel issued an interim award, which resolved some issues while reserving others for further hearing. The arbitrators then conducted a second hearing in early July 1998. Later that month, the panel issued a tentative final award. Thereafter, the parties submitted argument in a prearranged telephone conference and by subsequent letter briefs.
The panel issued a "final award" in August 1998, which expressly recognized that the parties' agreement had been terminated in September 1997. The award directed appellant to pay respondent specified damages, attorneys' fees, royalties, inventory payments, pre-award interest, post-award interest, and costs. It also required appellant to diligently develop and market the RI 7100A, and to make royalty payments to respondent as specified for five years from termination. In light of the award's royalty and joint-ownership provisions, the arbitrators gave each party certain audit rights. Finally, as pertinent here, the arbitrators ruled that the provisions in the agreement for arbitration and attorneys' fees would apply to any future disputes arising out of the award.[2]
After receiving the final award, appellant requested the panel to clarify, correct, and modify it in several respects. First, appellant sought clarification of a royalty provision. More significantly, appellant asked the panel to strike the provisions of the award that carried forward the contractual arbitration and attorneys' fees clauses. In support of that request, appellant argued that there was no contractual basis for ordering either party to submit to any future arbitration or to pay attorneys' fees, in light of the panel's acknowledgment that the agreement had been terminated. In response to appellant's requests, the panel corrected the royalty provision but refused to delete the arbitration and fee clauses from the award. In September 1998, the arbitrators issued and served their final award, as corrected.[3]
Respondent immediately petitioned the trial court to confirm the award. In response, appellant requested the court to correct the award prior to confirmation by eliminating the arbitration and attorneys' fees clauses. In seeking correction of the award, appellant argued that inclusion of the challenged clauses exceeded the arbitrators' powers. The trial court disagreed and granted respondent's petition to confirm the award in its entirety, without correction. The court later entered its formal judgment confirming the award in May 1999.
This timely appeal followed.

ISSUES ON APPEAL
Appellant's sole claim on appeal is that the trial court erred in refusing to correct the arbitration award. To resolve that claim, we must determine whether the arbitrators exceeded their authority in extending the arbitration and fee provisions from the parties' terminated contract to future controversies.
*691 In addition to the issue raised by appellant, we are called upon to decide whether respondent is entitled to attorneys' fees on appeal.

APPEALABILITY
After submission of the parties' briefs on appeal, we requested further briefing on the issue of whether appellant is an "aggrieved party" under Code of Civil Procedure, section 902.[4] "One is considered `aggrieved' whose rights or interests are injuriously affected by the judgment. [Citations.] Appellant's interest `"must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment."'" (County of Alameda v. Carleson (1971) 5 Cal.3d 730, 737, 97 Cal.Rptr. 385, 488 P.2d 953; cf. Life v. County of Los Angeles (1990) 218 Cal.App.3d 1287, 1293-1294, 267 Cal.Rptr. 557; Radunich v. Basso (1965) 235 Cal. App.2d 826, 829-830, 45 Cal.Rptr. 824; compare Ely v. Frisbie (1861) 17 Cal. 250, 260.)
At the time of our request for additional briefing, the record did not disclose any current dispute between the parties that might result in an order to arbitrate or the imposition of attorneys' fees. For that reason, it appeared that any adverse consequence of the challenged judgment would be so remote or contingent as to render our opinion advisory. But in further briefing, the parties have informed us of a pending controversy, which respondent seeks to arbitrate, concerning the scope of the parties' audit rights under the award. Both parties assert that appellant is an aggrieved party within the meaning of section 902, and both parties request us to consider this appeal on its merits.
We are mindful of appellant's observation that section 902 is a remedial statute, which should be "liberally construed," with "any doubts resolved in favor of the right to appeal." (Aries Dev. Co. v. California Coastal Zone Conservation Com. (1975) 48 Cal.App.3d 534, 542, 122 Cal.Rptr. 315.) More to the point, we are persuaded that respondent's attempts to compel further arbitration result in an immediate adverse impact on appellant. We therefore agree that appellant is an aggrieved party within the meaning of the statute, with the right to seek review of the judgment at this time.
Having concluded that the judgment is appealable, we turn to a consideration of this appeal on its merits.

STANDARD OF REVIEW
"It is well settled that the scope of judicial review of arbitration awards is extremely narrow. [Citations.]" (California Faculty Assn. v. Superior Court (1998) 63 Cal.App.4th 935, 943, 75 Cal. Rptr.2d 1; accord, Board of Education v. Round Valley Teachers Assn. (1996) 13 Cal.4th 269, 275, 52 Cal.Rptr.2d 115, 914 P.2d 193.) In determining whether private arbitrators have exceeded their powers, the courts must accord "substantial deference to the arbitrators' own assessments of their contractual authority...." (Advanced Micro Devices, Inc. v. Intel Corp. (1994) 9 Cal.4th 362, 373, 36 Cal. Rptr.2d 581, 885 P.2d 994.) Nevertheless, except where "the parties `have conferred upon the arbiter the unusual power of determining his own jurisdiction' [citation], the courts retain the ultimate authority to overturn awards as beyond the arbitrator's powers, whether for an unauthorized remedy or decision on an unsubmitted issue." (Id. at p. 375, 36 Cal.Rptr.2d 581, 885 P.2d 994.) "Guided by these standards, this court conducts a de novo review, independently of the trial court, of the question whether the arbitrator exceeded the authority granted him by the *692 parties' agreement to arbitrate. [Citation.]" (California Faculty Assn. v. Superior Court, supra, 63 Cal.App.4th at p. 945, 75 Cal.Rptr.2d 1; compare, Pierotti v. Torian (2000) 81 Cal.App.4th 17, 24, 96 Cal.Rptr.2d 553.) In undertaking our review, however, "we must draw every reasonable inference to support the award. [Citations.]" (Pierotti v. Torian, supra, 81 Cal.App.4th at p. 24, 96 Cal.Rptr.2d 553.)
In short, we review the superior court's order de novo, while the arbitrator's award is entitled to deferential review. (Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at p. 376, fn. 9, 36 Cal. Rptr.2d 581, 885 P.2d 994.)

DISCUSSION

A Did the Arbitrators Exceed Their Authority by Compelling Future Arbitration?
As a starting point for our analysis, we accept appellant's basic premise that a party cannot be compelled to arbitrate without its consent. It is beyond cavil that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (Steelworkers v. Warrior & Gulf Co. (1960) 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409; accord, Freeman v. State Farm Mut. Auto. Ins. Co. (1975) 14 Cal.3d 473, 481, 121 Cal.Rptr. 477, 535 P.2d 341; Cheng-Canindin v. Renaissance Hotel Associates (1996) 50 Cal.App.4th 676, 683, 57 Cal. Rptr.2d 867.)
The question here is whether appellant's initial agreement to arbitrate survived termination of the contract. Neither party has cited any California authority that squarely answers that exact question, nor has our independent research disclosed any. This appeal thus presents an issue of first impression in this state. We are not without guidance in resolving it, however.
We analyze the issue against the backdrop of California's "`strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution. [Citations.]'" (Moncharsh v. Heily & Blase (1992) 3 Cal.4th 1, 9, 10 Cal.Rptr.2d 183, 832 P.2d 899.) To further the policy favoring arbitration, courts indulge every reasonable intendment giving effect to such proceedings. (Ibid.) For the same reason, "ambiguities in the scope of arbitration are resolved in favor of coverage. [Citations.]" (Taylor v. Crane (1979) 24 Cal.3d 442, 450, 155 Cal.Rptr. 695, 595 P.2d 129.) Moreover, "courts should generally defer to an arbitrator's finding that determination of a particular question is within the scope of his or her contractual authority." (Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at p. 372, 36 Cal.Rptr.2d 581, 885 P.2d 994.) The deference due an arbitrator thus "requires a court to refrain from substituting its judgment for the arbitrator's in determining the contractual scope of those powers." (Ibid.) In short, we apply "a rule of substantial deference to the arbitrators' jurisdictional determinations. [Citation.]" (Id. at p. 374, 36 Cal. Rptr.2d 581, 885 P.2d 994.)
The strong public policy favoring arbitration is further promoted by judicial recognition that arbitration awards may be vacated or corrected only on very limited statutory grounds. (See, e.g., Moncharsh v. Heily & Blase, supra, 3 Cal.4th at pp. 27-28, 10 Cal.Rptr.2d 183, 832 P.2d 899; Alternative Systems, Inc. v. Carey (1998) 67 Cal.App.4th 1034, 1039, 79 Cal.Rptr.2d 567.) Here, the sole statutory basis for correcting the award is the claim that the arbitrators "exceeded their powers." (§ 1286.6, subd. (b).)[5] We consider that *693 claim, bearing in mind the substantial deference due the arbitrators' determination that they acted within the scope of their powers.[6] (Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at pp. 372, 374, 36 Cal.Rptr.2d 581, 885 P.2d 994; David v. Abergel (1996) 46 Cal.App.4th 1281, 1284, 54 Cal.Rptr.2d 443.)

1. Agreement to Arbitrate.
Our assessment of appellant's claim begins with this fundamental proposition: "The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate." (Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at p. 375, 36 Cal.Rptr.2d 581, 885 P.2d 994, citing Moncharsh v. Heily & Blase, supra, 3 Cal.4th at p. 8, 10 Cal.Rptr.2d 183, 832 P.2d 899.) Thus, in determining whether the arbitrators exceeded the scope of their powers here, we first look to the parties' agreement to see whether it placed any limitations on the arbitrators' authority.[7] It did not.
Here, in a broadly-worded arbitration clause, the parties agreed that "[a]ny disputes over this Agreement ... shall be resolved by final and binding arbitration in accordance with the rules then obtaining under the provisions of the California Code of Civil Procedure." That clause has sufficient breadth to include "`all controversies, whether legal, factual, equitable, contractual or tortious, having their roots in the [parties'] relationship....'" (Tate v. Saratoga Savings & Loan Assn. (1989) 216 Cal.App.3d 843, 855, 265 Cal.Rptr. 440, criticized on other grounds in Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at pp. 376-377, 36 Cal.Rptr.2d 581, 885 P.2d 994. And see generally, Knight et al, Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2000) ¶¶ 5:215.3-5:219, pp. 5-865-89.)

2. Application to Future Disputes.
Notwithstanding the breadth of the arbitration clause, appellant objects to its application to future controversies, contending *694 that the contractual obligation to arbitrate expired with termination of the agreement. On the same grounds, appellant also objects to the extension of the contractual attorneys' fees clause to future disputes. Not surprisingly, respondent disputes those contentions.
To resolve the issue, we consider whether the provisions in the award that compel future arbitration and permit the imposition of attorneys' fees bear "some rational relationship to the contract and the breach." (Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at p. 381, 36 Cal.Rptr.2d 581, 885 P.2d 994.) "The required link may be to the contractual terms as actually interpreted by the arbitrator (if the arbitrator has made that interpretation known), to an interpretation implied in the award itself, or to a plausible theory of the contract's general subject matter, framework or intent." {Ibid.) "The critical question with regard to remedies is not whether the arbitrator has rationally interpreted the parties' agreement, but whether the remedy chosen is rationally drawn from the contract as so interpreted." (Id. at p. 377, 36 Cal.Rptr.2d 581, 885 P.2d 994.)
Interpreting the agreement here, the arbitrators found that the parties intended joint ownership of the technology for a period of five years after contract termination. The arbitrators painstakingly spelled out the details of that continuing joint ownership. They recounted the history of the joint venture, detailing the actions of each party. Without expressly finding a breach by either party, the arbitrators declared the agreement terminated by mutual consent. Finally, in the portion of the award challenged here, the arbitrators extended the contract's arbitration provisions, including the attorneys' fees clause, to any controversies arising under the award.
We conclude that the challenged portions of the award are rationally drawn from the parties' agreement as interpreted in the arbitration proceeding. (Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at p. 377, 36 Cal.Rptr.2d 581, 885 P.2d 994.) Our conclusion rests on several factors. First, the parties contracted to arbitrate "any disputes over [the] Agreement." Assuming a broad interpretation of that clause, it is not irrational to extend its operation to controversies arising from the very award that interprets the agreement. Likewise, assuming a similarly broad reading of the parties' intent regarding fees, it is not irrational to extend the companion attorneys' fees clause to future disputes as well. (Compare, Tanner v. Tanner (1997) 57 Cal.App.4th 419, 424, 67 Cal.Rptr.2d 204 [pursuant to parties' intent, attorneys' fees provision limited to marital dissolution proceeding].) Furthermore, the agreement contemplated continuing joint ownership after its termination, with concomitant rights and responsibilities. Apparently anticipating that difficulties might inhere in joint ownership, especially given the parties' discordant history, the arbitrators fashioned a remedy that contained a mechanism for future dispute resolution. In our view, that remedy is rationally drawn both from the agreement as interpreted and from the circumstances that gave rise to its termination. We are therefore compelled to affirm the arbitrators' award. "The award will be upheld so long as it was even arguably based on the contract; it may be vacated only if the reviewing court is competed to infer the award was based on an extrinsic source. [Citations.] In close cases the arbitrator's decision must stand." (Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at p. 381, 36 Cal. Rptr.2d 581, 885 P.2d 994, original italics.)
In affirming the award in this case, we expressly hold that a party's contractual duty to arbitrate disputes may survive termination of the agreement giving rise to that duty. "While neither statutory nor case law addresses the precise issue before us, the judicial policy of deference to the judgment of arbitrators provides appropriate guidance." (Swan Magnetics, *695 Inc. v. Superior Court (1997) 56 Cal.App.4th 1504, 1511, 66 Cal.Rptr.2d 541.) We also find guidance in California's statutory scheme, which explicitly recognizes that written agreements to arbitrate may be "extended or renewed by an oral or implied agreement." (§ 1280, subd. (f).) (See Paud v. Alco Plating Corp. (1971) 21 Cal.App.3d 362, 369, 98 Cal.Rptr. 706; cf. Berman v. Renart Sportswear Corp. (1963) 222 Cal.App.2d 385, 388, 35 Cal.Rptr. 218.) In addition, our holding finds implicit support in several cases involving terminated agreements. (See, e.g., Moncharsh v. Heily & Blase, supra, 3 Cal.4th at p. 28, 10 Cal.Rptr.2d 183, 832 P.2d 899 ["The parties' dispute over the allocation of attorney's fees following termination of employment clearly arose out of the employment contract; the arbitrator's award does no more than resolve that dispute. Under these circumstances, the arbitrator was within his `powers' in resolving the questions of law presented to him."]; see also, Coast Plaza Doctors Hospital v. Blue Cross of California (2000) 83 Cal.App.4th 677, 99 Cal.Rptr.2d 809 [arbitration was compelled notwithstanding termination of the agreement containing the arbitration provision]; Bos Material Handling, Inc. v. Crown Controls Corp. (1982) 137 Cal. App.3d 99, 186 Cal.Rptr. 740 [claims of wrongful contract termination were arbitrable]; Paud v. Alco Plating Corp., supra, 21 Cal.App.3d at p. 369, 98 Cal.Rptr. 706 [arbitrator did not exceed his jurisdiction by awarding vacation pay that accrued after termination of the labor agreement]; Swift-Chaplin Productions, Inc. v. Love (1963) 219 Cal.App.2d 110, 115, 32 Cal.Rptr. 758 [where demand for arbitration was made after contract termination, determination of arbitrability was for arbitrator].)
The conclusion we reach here is further bolstered by several persuasive federal cases. For example, in interpreting collective bargaining agreements, the United States Supreme Court has determined that "the parties' obligations under their arbitration clause survived contract termination when the dispute was over an obligation arguably created by the expired agreement." (Nolde Bros., Inc. v. Bakery Workers (1977) 430 U.S. 243, 252, 97 S.Ct. 1067, 51 L.Ed.2d 300, discussing John Wiley & Sons v. Livingston (1964) 376 U.S. 543, 555, 84 S.Ct. 909, 11 L.Ed.2d 898.) As the high court said, "in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract." (Nolde Bros., Inc. v. Bakery Workers, supra, 430 U.S. at p. 253, 97 S.Ct. 1067. But see also, Litton Financial Printing Div. v. NLRB (1991) 501 U.S. 190, 203-205, 111 S.Ct. 2215, 115 L.Ed.2d 177.) We acknowledge the need for caution in applying principles from collective bargaining decisions to commercial arbitration cases. (Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at p. 379, 36 Cal. Rptr.2d 581, 885 P.2d 994.) At the same time, we observe that the critical principle here, though developed in federal labor cases, has been applied in at least one other context as well. (See, Aspero v. Shearson American Exp., Inc., supra, 768 F.2d 106 [arbitration under New York Stock Exchange Rules].) Stated simply, the federal rule is this: "Although it is created by contract, the duty to arbitrate does not necessarily end when the contract is terminated." (Id at p. 108.) In this case, the arbitrators made a considered decision to apply that principle. In our view, the arbitrators acted properly in doing so here, given the nature of the agreement before them.[8]

*696 3. Jury Trial Rights.

Appellant also complains that the award violates its constitutional jury trial rights by compelling involuntary participation in future arbitration proceedings. We disagree.
The parties waived their jury trial rights by consenting to arbitrate their contract disputes. (Madden v. Kaiser Foundation Hospitals (1976) 17 Cal.3d 699, 713-714, 131 Cal.Rptr. 882, 552 P.2d 1178; cf. Rosenthal v. Great Western Fin. Securities Corp. (1996) 14 Cal.4th 394, 410-411, 58 Cal.Rptr.2d 875, 926 P.2d 1061; compare, Titan Group, Inc. v. Sonoma Valley County Sanitation Dist. (1985) 164 Cal.App.3d 1122, 1129, 211 Cal.Rptr. 62.) Under our holding, the parties' consent survived termination of their contract. Enforcing the arbitration clause thus does not implicate the parties' constitutional rights; it merely gives effect to their agreement. (Cf. Rifkind & Sterling, Inc. v. Rifkind (1994) 28 Cal.App.4th 1282, 1288-1289, 33 Cal. Rptr.2d 828.)

A. Retained Jurisdiction.
Appellant next claims that the arbitrators improperly retained jurisdiction by mandating arbitration in the event of future disputes. Appellant points out that the arbitrators' tentative final award expressly declined to reserve jurisdiction absent both parties' consent. But the later versions of the award included the arbitration provision challenged here. Appellant objects to that provision as an improper attempt to retain arbitral jurisdiction.
Respondent counters that the arbitrators did not retain jurisdiction in including those provisions; they merely decided that the parties' contractual arbitration provision would apply to future disputes over the award. Respondent thus distinguishes between the reservation of jurisdiction, which permits a pending arbitration to continue, and the provision challenged here, which mandates the institution of a new arbitration proceeding in the event of future disputes. We appreciate that distinction and its procedural implications. (See, e.g., § 1284 [arbitrators lose jurisdiction to correct award 30 days after its service].) In the context of this particular appeal, however, that distinction need not affect our analysis since appellant resists the prospect of any future arbitration, whether it results from the retention of jurisdiction or from the institution of a new proceeding. (Cf. Colvig v. RKO General, Inc. (1965) 232 Cal.App.2d 56, 74-75, 42 Cal.Rptr. 473.) In any event, appellant's objection is unavailing.
An arbitrator's continuing authority may properly be drawn both from the parties' agreement to arbitrate their disputes and from the nature of the remedy itself. (Cf. Swan Magnetics, Inc. v. Superior Court, supra, 56 Cal.App.4th at p. 1512, 66 Cal.Rptr.2d 541.)[9] Of course, an arbitrator may not exert or retain jurisdiction over issues that the parties have not submitted. (Ray Wilson Co. v. Anaheim Memorial Hospital Assn. (1985) 166 Cal.App.3d 1081, 1091-1092, 213 Cal. Rptr. 62, disapproved on other grounds in Moncharsh v. Heily & Blase, supra, 3 Cal.4th at pp. 27-28, 10 Cal.Rptr.2d 183, 832 P.2d 899.) Nor may an arbitrator reserve jurisdiction when the remedy does not warrant it. (San Jose Federation etc. *697 Teachers v. Superior Court (1982) 132 Cal. App.3d 861, 868, 183 Cal.Rptr. 410.) The arbitrators in this case did neither, however. Here, the parties gave the arbitration panel the authority to resolve "any disputes over" their agreementan agreement that contemplated continuing performance for five years after its termination. Given the nature of the contract and the character of the dispute in this case, the arbitrators were warranted in fashioning a remedy that permitted future arbitral jurisdiction.

5. Finality.
Appellant also takes issue with the award on the ground that its provision for future arbitration robs it of finality. As appellant properly points out, our high court has underscored the importance of finality in arbitration awards. "`Even in the absence of an explicit agreement, conclusiveness is expected; the essence of the arbitration process is that an arbitral award shall put the dispute to rest.'... [¶] This expectation of finality strongly informs the parties' choice of an arbitral forum over a judicial one. The arbitrator's decision should be the end, not the beginning, of the dispute." (Moncharsh v. Heily & Blase, supra, 3 Cal.4th at p. 10, 10 Cal.Rptr.2d 183, 832 P.2d 899.) But finality is achieved by minimizing judicial intervention in the arbitration process. {Ibid.) And as we recently observed, the "strong judicial and legislative policy in favor of arbitral finality ... is directed at judicial second-guessing upon petitions to confirm, correct, or vacate arbitration awards.... Thus, a result reached through arbitration is not inherently `more final' than decisions reached by a trial court; rather, the process is considered to be final with respect to subsequent challenges to the merits in the court system." (Swan Magnetics, Inc. v. Superior Court, supra, 56 Cal.App.4th at p. 1510, 66 Cal.Rptr.2d 541; original italics.)
The fact that an arbitration award contemplates additional future proceedings does not necessarily destroy its character as "final and binding." (Compare San Jose Federation etc. Teachers v. Superior Court, supra, 132 Cal.App.3d at p. 866, 183 Cal.Rptr. 410.) Furthermore, our courts have recognized that the finality accorded to judgments sometimes must give way for example, where an injunctive decree is concerned. "`This is so because the decree, although purporting on its face to be permanent, is in essence of an executory or continuing nature, creating no right but merely assuming to protect a right from unlawful and injurious interference.'" (Swan Magnetics, Inc. v. Superior Court, supra, 56 Cal.App.4th at p. 1509, 66 Cal. Rptr.2d 541, quoting Sontag Chain Stores Co. v. Supeiior Court (1941) 18 Cal.2d 92, 94-95, 113 P.2d 689.) Here, too, the arbitrators chose a remedy "of an executory or continuing nature." (Swan Magnetics, Inc. v. Superior Court, supra, 56 Cal. App.4th at p. 1509, 66 Cal.Rptr.2d 541.) But that does not prevent the award and the ensuing judgment from being "final with respect to subsequent challenges to the merits in the court system." (Id. at p. 1510, 66 Cal.Rptr.2d 541, original italics.)
As appellant correctly observes, a judgment confirming an arbitration award is enforceable in the same manner as any other judgment in a civil action. (§ 1287.4.) But appellant takes that observation a step further, arguing that the retention of arbitral jurisdiction and the prospect of future arbitration proceedings are "anathema" to the comprehensive statutory scheme governing enforcement of judgments. (§§ 680.010-724.260.) We disagree.
In our view, the judgment enforcement laws do not impair a party's right "to arbitrate new disputes which might affect its performance under ... earlier awards." (Valsan Partners Limited Partnership v. Calcor Space Facility, Inc. (1994) 25 Cal.App.4th 809, 818, 30 Cal.Rptr.2d 785; cf. Sandler v. Casale (1981) 125 Cal.App.3d 707, 713, 178 Cal. Rptr. 265 [subsequent action may be brought to interpret judgment confirming arbitration award], and Colvig v. RKO *698 General, Inc., supra, 232 Cal.App.2d at p. 72, 42 Cal.Rptr. 473 [court's continuing jurisdiction does not impair finality of judgment confirming award].) In the Valsan case, disputes over a continuing contract had resulted in three prior arbitration awards. The plaintiff sought to compel a fourth arbitration following its termination of the contract. While expressing "concern about a party attempting to endlessly rearbitrate previous awards," the court nevertheless ordered the fourth arbitration, noting that the first three awards were all "predicated upon the contract continuing in force as construed by the arbitrators." (Valsan Partners Limited Partnership v. Calcor Space Facility, Inc., supra, 25 Cal. App.4th at p. 818, 30 Cal.Rptr.2d 785.) As the court described it, the fourth arbitration was sought to resolve the plaintiffs "latest and presumably final dispute with Calcor, arising from Valsan's termination of the agreement." (Id. at p. 817, 30 Cal.Rptr.2d 785, italics added.) According to appellant, the Valsan decision stands for the proposition that multiple arbitration proceedings will be allowed only while the parties' contract remains in force. We do not read the decision so narrowly. For one thing, the decision does not make clear whether termination of the parties' contract completely severed their business relationship. Here, of course, it did not. For another thing, the opinion does not suggest that the arbitrator asserted continuing jurisdiction over post-termination disputes, and we will not speculate on what the court's holding might have been in the face of such an assertion. But we do note that the court acknowledged this well-established rule: "Any doubts as to the meaning or extent of an arbitration award are for the arbitrators and not the court to resolve." (Id. at p. 818, 30 Cal.Rptr.2d 785, citing Morris v. Zuckennan (1968) 69 Cal.2d 686, 690, 72 Cal.Rptr. 880, 446 P.2d 1000.) Applying that rule to this case, it follows that arbitrators, not judges, should resolve any doubts or disputes concerning the award at issue here.
We thus reject all of appellant's challenges to the arbitration award. We reiterate that arbitrators enjoy "wide discretion both to determine the scope of their powers and to fashion a just remedy ... rationally related to the contract and the breach." (Swan Magnetics, Inc. v. Superior Court, supra, 56 Cal.App.4th at p. 1511, 66 Cal.Rptr.2d 541, citing Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at pp. 381, 389, 36 Cal.Rptr.2d 581, 885 P.2d 994.) And we find that the arbitrators properly exercised their discretion in determining the scope of their powers and fashioning a remedy in this case. We thus conclude that the trial court acted properly in confirming the award.

B. Is Respondent Entitled to Attorneys' Fees on Appeal?
Respondent requests its attorneys' fees on appeal, both by motion and in its brief. Respondent asserts two bases for its fee request. First, it claims entitlement to fees under the parties' contract. In the alternative, respondent seeks appellate fees as a sanction.

1. Sanctions.
We first address the request for sanctions. Sanctions are appropriate when an appeal is "frivolous or taken solely for delay." (§ 907. See also, Cal. Rules of Court, rule 26(a)(2).)[10] An appeal is frivolous "only when it is prosecuted for an improper motiveto harass the respondent *699 or delay the effect of an adverse judgmentor when it indisputably has no meritwhen any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (In re Marriage of Flaherty (1982) 31 Cal.3d 637, 650, 183 Cal.Rptr. 508, 646 P.2d 179.) The definition is narrowly drawn "to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is not by definition frivolous and should not incur sanctions." (Ibid., original italics.)
By that standard, this is not a frivolous appeal. There is no evidence of improper motive or subjective bad faith on appellant's part. The appeal challenged only the arbitration provisions of the award; it did not delay appellant's payment of the money due respondent under the judgment. Furthermore, in this case of first impression, we do not agree that appellant's arguments indisputably lack merit. (See, In re Marriage of Flaherty, supra, 31 Cal.3d at p. 651, 183 Cal.Rptr. 508, 646 P.2d 179; compare Pierotti v. Torian, supra, 81 Cal.App.4th at p. 31, 96 Cal. Rptr.2d 553.) In short, this is not an appropriate case for sanctions.

2. Fees Pursuant to Contract.
We next consider respondent's claim for appellate fees under the contract. The agreement provided that "[e]ach party's cost of arbitration, attorneys' fees and costs of experts shall be borne in such proportion as the Arbitration Panel may determine." The arbitration panel awarded fees respondent incurred in the arbitration proceeding itself. From the award, we may infer that the panel considered respondent the prevailing party. Its award of fees was therefore justified. (See, e.g., Pierotti v. Torian, supra, 81 Cal.App.4th at p. 24, 96 Cal.Rptr.2d 553; cf. Moshonov v. Walsh (2000) 22 Cal.4th 771, 94 Cal.Rptr.2d 597, 996 P.2d 699; Moore v. First Bank of San Luis Obispo (2000) 22 Cal.4th 782, 94 Cal.Rptr.2d 603, 996 P.2d 706.) Appellant does not contend otherwise; in fact, it has already paid the fees previously awarded by the panel.
But appellant argues against an award of attorneys' fees on appeal, based principally on its contention that the obligation to pay fees was extinguished on termination of the agreement. We have previously rejected that contention in affirming the award. The award provides that the contractual attorneys' fees clause "shall be applicable to any dispute arising under or related to this Final Award." Clearly, this appeal constitutes a dispute arising under the award. (Cf. Imperial Bank v. Pirn Electric, Inc. (1995) 33 Cal.App.4th 540, 558, 39 Cal.Rptr.2d 432.)
Appellant also suggests that "the most appropriate resolution" in the exercise of our "sound discretion" would be an order directing each party to bear its own attorneys' fees on appeal. We respectfully decline appellant's suggestion.
In our view, such an order would not comport with the parties' expressed intentions regarding fees. The contractual fee provision permits an award of attorneys' fees in the arbitrators' discretion. Although that clause clearly is directed at the arbitration proceeding itself, it is broad enough to cover fees on this appeal. We have previously recognized that "a contract provision for recovery of attorney fees if a party is required to `bring suit' is broad enough to include fees arising in arbitration proceedings." (Tate v. Saratoga Savings & Loan Assn., supra, 216 Cal. App.3d at pp. 856-857, 265 Cal.Rptr. 440.) We now recognize the obverse: that a contract provision that permits the recovery of fees in arbitration is broad enough to include fees in related judicial proceedings, including an appeal from the judgment confirming the award. "This dispute was to enforce the terms of the contract; the arbitration award was to enforce the terms of the contract; and this action to *700 confirm the award is also to enforce the terms of the contract. [The prevailing party] is entitled to a reasonable amount for its attorney's fees in this action ... and this appeal." (Stermer v. Modiano Constr. Co. (1975) 44 Cal.App.3d 264, 272-273, 118 Cal.Rptr. 309. Accord, San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co. (1972) 28 Cal.App.3d 556, 573, 104 Cal. Rptr. 733.) "The rationale for the broad interpretation in these cases is to give meaning to the parties' intentions in agreeing to an attorney fees clause." (Villinger/Nicholls Development Co. v. Meleyco (1995) 31 Cal.App.4th 321, 327, 37 Cal. Rptr.2d 36.)
Giving meaning to the parties' expressed intent regarding fees, we conclude that respondent is entitled to contractual attorneys' fees on this appeal. We therefore grant respondent's motion for fees, in an amount to be determined by the trial court upon petition.[11]

DISPOSITION
We affirm the judgment. We remand this matter to the trial court, with instructions to determine and award respondent's reasonable appellate attorneys' fees and costs upon petition.
PREMO, Acting P.J., and BAMATTRE-MANOUKIAN, J., concur.
NOTES
[*] Kennard, J., dissented.
[1] The three arbitrators were Malcolm M. Lucas, retired Chief Justice of the California Supreme Court, Edward A. Panelli, retired Justice of the California Supreme Court, and Richard Chernick.
[2] The arbitration provision in the award reads as follows: "[¶] 13. The JMDA [agreement] contains an arbitration provision. Consistent with the purposes of the JMDA, that provision shall be applicable to any dispute arising under or related to this Final Award." As to attorneys' fees, the award provides: "[H] 12. The JMDA contains an attorney fee provision. Consistent with the purposes of the JMDA, that provision shall be applicable to any dispute arising under or related to this Final Award."
[3] As noted above, the arbitrators had previously issued awards in April 1998 ("Interim Award"), July 1998 ("[Tentative] Final Award"), and August 1998 ("Final Award"). The award issued in September 1998 ("Final Award (Corrected)") constituted the arbitrators' final decision. Further references in this opinion to "the award" are to the September 1998 Final Award (Corrected).
[4] That statute provides as follows: "Any party aggrieved may appeal in the cases prescribed in this title. A party appealing is known as an appellant, and an adverse party as a respondent." Unless otherwise specified, further statutory references in this opinion are to the Code of Civil Procedure.
[5] As relevant here, section 1286.6 requires the court to "correct the award and confirm it as corrected if the court determines that: [¶] ... [¶] (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted." See also, section 1286.2, which provides for vacation of arbitration awards under specified circumstances, including in cases in which "(d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."
[6] Patently, the arbitrators' inclusion of the challenged provisions was deliberate. In response to appellant's request to delete the offending terms, the panel observed: "The parties' right and obligation to arbitrate their disputes, in accordance with the JMDA, survives the termination of that agreement, e.g., Aspero v. Shearson[ American Exp., Inc. (6th Cir.1985) ] 768 F.2d 106, 109 ... cert, denied, 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985), and disputes arising under the agreement remain subject to the attorney fee allocation provision." In essence, the arbitrators made an express, considered jurisdictional determination that they were acting within their authority.
[7] In some situations, the agreement itself may not be the only source of restrictions on an arbitrator's authority. "Even where the parties' original contract included a broad arbitration clause, the arbitrator's powers may be restricted by the limitation of issues submitted." (Advanced Micro Devices, Inc. v. Intel Corp., supra, 9 Cal.4th at p. 382, 36 Cal. Rptr.2d 581, 885 P.2d 994.) Additionally, an arbitrator's powers may be limited by statute. (See, e.g., Broughton v. Cigna Healthplans (1999) 21 Cal.4th 1066, 1086, 90 Cal.Rptr.2d 334, 988 P.2d 67 [arbitrators must comply with unwaivable statutory requirements]; Board of Education v. Round Valley Teachers Assn., supra, 13 Cal.4th 269, 52 Cal.Rptr.2d 115, 914 P.2d 193 [arbitrators may not enforce provisions of agreement preempted by statute]; Alternative Systems, Inc. v. Carey, supra, 67 Cal.App.4th 1034, 79 Cal.Rptr.2d 567 [same]; Marsch v. Williams (1994) 23 Cal.App.4th 238, 246, 28 Cal.Rptr.2d 402 [arbitrators lack statutory power to appoint receivers]; and Luster v. Collins (1993) 15 Cal. App.4th 1338, 1349, 19 Cal.Rptr.2d 215 [arbitrators lack statutory authority to order economic sanctions]; but compare David v. Abergel, supra, 46 Cal.App.4th at p. 1284, 54 Cal. Rptr.2d 443 [sanction remedy was within scope of arbitrator's authority] and Young v. Ross-Loos Medical Group, Inc. (1982) 135 Cal.App.3d 669, 673-674, 185 Cal.Rptr. 536 [same: dismissal sanction was within arbitrator's powers].) In this case, however, the arbitrators' powers were neither restricted by statute nor limited by the parties' submission of issues.
[8] The factual framework of this case strongly informs our decision here. Thus, our holding flows both from the parties' underlying agreement, which expressly contemplated a continuing relationship for five years after contract termination, and from the remedy selected by the arbitrators, which is rationally drawn from that agreement. Our decision, therefore, should be read with the particular factual framework of this case in mind. (See, e.g., Brown v. Kelly Broadcasting Co. (1989) 48 Cal.3d 711, 734-735, 257 Cal.Rptr. 708, 771 P.2d 406.)
[9] By separate motion, appellant has asked us to reconsider our earlier denial of its request for judicial notice of documents filed with the superior court in the Swan case, Specifically, appellant wants us to take notice that the arbitrator in Swan did not expressly terminate the parties' agreement. But that fact, even if true, is immaterial to our determination here. This proceeding, like Swan, "pertains to a continuing dispute over a contract that contains an express agreement to arbitrate." (Swan Magnetics, Inc. v. Superior Court, supra, 56 Cal.App.4th at p. 1510, 66 Cal.Rptr.2d 541.) Whether that contract was terminated is irrelevant under our view of the case. For that reason, we deny appellant's request for reconsideration.
[10] Section 907, reads as follows: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." California Rules of Court, rule 26(a)(2), provides: "If the appeal is frivolous or taken solely for the purpose of delay ... the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."
[11] The agreement contemplates that the arbitration panel will determine fees. But remand to the arbitrators is no longer possible, for at least two reasons. First, as a practical matter, the panel is no longer constituted. Second, pursuant to statute, the arbitrators no longer have jurisdiction over this particular dispute. (§ 1284; cf. Rosenquist v. Haralambides (1987) 192 Cal.App.3d 62, 67, 237 Cal.Rptr. 260.) By contrast, the trial court "retains jurisdiction to determine any subsequent petition involving the same agreement to arbitrate and the same controversy...." (§ 1292.6.) The trial court thus is empowered to award attorneys' fees and costs. (California Teachers Assn. v. Governing Board (1984) 161 Cal.App.3d 393, 400, 207 Cal.Rptr. 659.) A determination of the reasonable amount of appellate fees and costs "rests most appropriately with the trial court on a showing of nature of the services and the time involved. [Citations.]" (Vitek, Inc. v. Alvarado Ice Palace, Inc. (1973) 34 Cal.App.3d 586, 595, 110 Cal.Rptr. 86. See also, Leaf v. Phil Rauch, Inc. (1975) 47 Cal.App.3d 371, 379, 120 Cal. Rptr. 749.)