Filed 10/21/14  Souroudi v. Heritage Group Assocs. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BEHNAM SOROUDI,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HERITAGE GROUP ASSOCIATES et al.,<br><br>    Defendants and Respondents. | B245590<br><br>(Los Angeles County<br>Super. Ct. Nos. BC471027 & BS99595) |

APPEAL from judgments of the Superior Court of Los Angeles County, Daniel J. Buckley, Judge.  Affirmed.

Horvitz & Levy, David M. Axelrad, Robert H. Wright; Steckbauer Weinhart, William W. Steckbauer and Sean A. Topp, for Plaintiff and Appellant.

Morrison & Foerster, Miriam A. Vogel; Irell & Manella, Gregory R. Smith and Michael H. Strub, Jr., for Defendants and Respondents.

INTRODUCTION

Plaintiff Behnam Soroudi appeals from the judgments entered after the trial court denied his petitions to vacate the two most recent arbitration awards in a decade-long dispute pitting plaintiff against his brothers[1] and their family-run and jointly-held business enterprises. Plaintiff contends that the court erred in finding again that the arbitrators did not exceed their power when they ruled on plaintiff's most recent demand that defendants provide plaintiff with the entities' books and records. We conclude the trial court did not err. The arbitrators' authority is patently grounded in the parties' agreement to arbitrate, the relief granted, and plaintiff's own many requests to the arbitrators to enforce his right to receive the records and accountings. Therefore, we affirm the judgments.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Plaintiff triggers this action by filing his complaint.*

In 2001, plaintiff commenced this protracted and deeply personal litigation involving family-run and other business enterprises including several real estate ventures jointly owned by the brothers (together, the entities).[2] Plaintiff's complaints alleged his brothers, their accountant, and the entities (together, defendants) had converted jointly-owned property and stolen millions of dollars.[3] Among other relief, plaintiff sought an accounting (Case No. BC250936) and "full disclosure" of all the entities', "files, documents, notes, records, communications, and all other information, no matter how

---

[1]     Plaintiff's brothers are Mehdi, Behrouz, and Mehran Soroudi and are referred to herein as "the brothers."

[2]     The entities named as defendants in plaintiff's 2001 complaints are Heritage Group Associates, Embassy Group Associates, L.P., Quest Enterprises, L.P., Alliance Group, L.P., New Alley Plaza, L.P., Fashion Mall, Ltd., L.P., Vista Enterprises, L.P., The Fountain Group, L.P., Bright Investments, L.P., 777 Investment Group, LLC, Golden Cove Group, LLC, San Pedro Capital, LLC, Melrose Enterprises, LLC., and numerous trusts, among others.

[3]     As this case has been before this court previously, we take much of the background facts from our earlier opinion, filed in late 2007.

2

characterized or labeled." He also demanded that defendants make the books and records, tax returns, and all financial documents of the entities available for inspection and copying (Case No. SC067166).

2. *The parties agree to submit to arbitration before the Rabbinical Council of California.*

The parties agreed in writing to submit the controversy to binding arbitration through the Beis Din of the Rabbinical Council of California (the RCC). (Hereinafter, the submission agreement.) The controversy was defined in the submission agreement as "[a] comprehensive settlement of *all claims and cross claims*" and included in its scope "all legal, equitable, beneficial and other interests of ownership of any or all members of the Soroudi Family in the properties, assets and entities listed on the attached Exhibit [A] . . . ." (Italics added, see fn. 2, *ante*.) "It [was] *the intention* of each undersigned party that *all claims and disputes concerning the subject matter hereof shall be fully and finally resolved by the execution of this instrument*." (Italics added.) In the submission agreement the parties waived and surrendered their right to present their dispute to a court. The only recourse to court would be if one of the parties did not honor the submission agreement or the decisions made by the arbitrators under the submission agreement.

With particular reference to documents, the submission agreement provided for an "exchange," under the RCC's supervision, of "documents in accordance with the terms of Exhibit B" (Exhibit B). Exhibit B provided for the exchange of a list of 20 categories of "accounting books and records" pertaining to the entities listed in Exhibit A to the submission agreement (see fn. 2, *ante*), and required, should a party desire the production of other documents not identified in Exhibit B, that "*the RCC shall decide the matter*." (Italics added.) Finally, Exhibit B established that "[*a*]*ny* disputes concerning the production of said documents shall be resolved by the RCC." (Italics added.)

During the protracted arbitration, plaintiff persistently sought inspection of all of the entities' many books and records, often citing provisions of the Corporations Code. In January 2003, at the arbitrators' request, plaintiff submitted a 10-page list of demands

3

that included claims he had "an *unconditional right to access* to *all* documents of *all of the entities*. [Plaintiff] request[ed] that these documents be immediately transferred *to the accountant of his choice* to analyze the information. This document request is for all documents existing from 1984 to the present." (Italics added.) He asked the RCC to require defendants "to cooperate with [plaintiff's] tax planning resulting from any RCC decision" and to enforce "all agreements made during the existence of the partnership between or involving" plaintiff and defendants.

        3. *The 2005 Award*

The matter was heard by a panel of three rabbis, a Beis Din, which rendered an award in 2005 finding in favor of defendants (the 2005 Award, which includes a later-filed corrected award). With respect to plaintiff's claims he was entitled to access to business records and that he was improperly denied partnership documents, the 2005 Award "declare[d] this to be patently false. The Plaintiff had full access to all information to which he is legally entitled." In the 2005 Award's section entitled "Operational, Management, and Accounting Expenses," the Beis Din ordered defendants to continue to maintain records detailing the allocation of fees and costs to defendants of managing plaintiff's share of the entities, and directed plaintiff to pay defendants 7.6 percent of all the gross revenues generated by the entities for those costs beginning January 1, 2004. Finally, the RCC "retain[ed] jurisdiction regarding any disputes that might arise regarding interpretation or implementation of [its] ruling."

Plaintiff moved to vacate the 2005 Award and defendants moved to confirm it. The trial court confirmed the 2005 Award. Plaintiff did not appeal to challenge any portion of the 2005 Award but did challenge a later judgment confirming the RCC's subsequent grant of attorney's fees to defendants. Plaintiff contended the RCC had no authority to grant attorney's fees. In affirming the fee award, we quoted from Code of Civil Procedure section 1283.4 that " 'The award . . . shall include a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy.' " We observed that "the arbitration agreement envisioned situations in which the parties were obligated to return to the arbitrators to address

4

additional issues." We determined that "the arbitrators had the jurisdiction to utilize a reasonably necessary incremental process to issue successive awards."

4. *The 2009 Award*

Plaintiff refused to pay the costs and attorney fees granted to defendants in the 2005 Award. In December 2008, defendants filed a claim with the Beis Din seeking to enforce those provisions of the 2005 Award that plaintiff had ignored. In reply, plaintiff explained he was in the process of writing to the Beis Din to "*Request . . .* Enforcement of the [2005 Award]" as he wanted the RCC's "help in getting [defendants] to comply with their obligations under the Judgment" to provide him documents. (Italics added.) He asserted that he had "yet to receive copies of **any of** the dozens of reports that [defendants] represented to the RCC that they kept, maintained, prepared and updated, despite my numerous requests." He asked the RCC to order defendants to provide those documents "immediately and on a continuous monthly basis" until the 7.6 percent management "fees are no longer charged or the properties [are] sold." Plaintiff submitted an 18-page, single-spaced listing of requested documents that were the subject of his demand, including " 'dozens' of accounting files concerning jointly-held properties that [plaintiff] contend[s] [defendants] then maintained." In defendants' view, the 18-page list constituted "literally all of the books and records for all of the jointly held properties."

The RCC issued its fourth award (the 2009 Award) finding at paragraph 8 that defendants "have fully, completely and fairly accounted to [plaintiff with] respect to all of the jointly held entities (as identified in Exhibit '1' to the February 6 correspondence) through December 31, 2008, and that [plaintiff] *has no legitimate claim or entitlement to any additional documents or materials from* [*defendants*]." (Italics added.) As before, the arbitrators "retain[ed] jurisdiction over the parties to enforce these rulings and any other matters which may arise in connection with the Submission Agreement, the Beis Din's prior orders, and the matters submitted by the parties to the Beis Din for resolution."

Plaintiff sought to vacate paragraph 8 of the 2009 Award on the ground it "significantly exceeded the scope of the issues submitted to the arbitrators." Defendants

5

filed a counter request for confirmation of the 2009 Award. The trial court denied plaintiff's motion to vacate and confirmed the 2009 Award. The court found the RCC "had jurisdiction to make the . . . 2009 Award, including the challenged ruling, both as a result of the parties' Submission Agreement and the judicial orders and rulings regarding it. . . . Having submitted, among others, the issue of [defendants'] reporting and document production to the RCC for resolution, [plaintiff] cannot now assert that the RCC lacked jurisdiction to resolve that issue. [Citation.]" Plaintiff did not seek review *and so that judgment is final*.

     5. *The July and August 2012 Awards*

Plaintiff's accountant had asked defendants' accountant to send documents pertaining to the entities directly to plaintiff's accountant rather than to plaintiff. Then, on June 21, 2011, plaintiff's attorney demanded that plaintiff be given access to inspect the books, records, and financial information of each the entities "for the full time periods specified in each of the controlling Corporations Code sections *through the present . . . .*" citing Corporations Code sections 16103, former 17106, and former 15634.[4] (Italics added.) In late 2011, plaintiff instructed defendants' accountant to resend everything directly to plaintiff. Plaintiff's email stated, "all original docs need to be send [*sic*] to my office, no exception [¶] [W]hatever u have send to [my accountant] before, [*sic*] need to

---

[4]     Corporations Code section 16103 reads in part, "(b) The partnership agreement may not do any of the following: [¶] . . . [¶] (2) Unreasonably restrict the right of access to books and records under subdivision (b) of Section 16403, or the right to be furnished with information under subdivision (c) of Section 16403." (Corp. Code, § 16103, subd. (b)(2).)

    Former Corporations Code section 17106 read in part, "Each member, manager, and holder of an economic interest [in a limited liability company] has the right upon reasonable request, for purposes reasonably related to the interest of that person as a member, manager, or holder of an economic interest, to each of the following: [¶] (1) To inspect and copy during normal business hours any of the records required to be maintained by Section 17058." (Former Corp. Code, § 17106, subd. (b)(1).)

    Former Corporations Code section 15634 read in part, "Each limited partner has the right upon reasonable request to each of the following: [¶] (1) Inspect and copy during normal business hours any of the partnership records required to be maintained by Section 15615." (Former Corp. Code, § 15634, subd. (b)(1).)

resend to me with proof of delivery." "[A]gain warning that [¶] even if you have a delivery receipt to [my accountant's] office does not mean anything . . . ."

In October 2011, plaintiff filed this instant complaint (Case No. BC471027) -- this time against the entities only (see fn. 2, *ante*.) – seeking to enforce his right to a complete review and inspection of, and to copy *all* books and records of the corporate, limited partnerships, and associated entities based on various provisions of the Corporations Code. The complaint did not name the brothers or the trusts as defendants.

The entities moved for an order compelling plaintiff to arbitrate his claims before the RCC. The trial court granted the motion reasoning in part that plaintiff's new lawsuit "encompasses the same records and documents at issue in the earlier lawsuit . . . [that is] covered by the [submission agreement]," based on the same Corporations Code sections, and to which he had already been given access under the RCC's supervision.

Plaintiff refused to participate in arbitration, even to respond to the Beis Din's request that he address the RCC's jurisdiction to resolve document demands. Plaintiff insisted he had "not consented to arbitrate any pending matters before the RCC" and declared his belief that the RCC had no jurisdiction over his new claims.

The RCC issued its judgment (the 2012 Awards) in two parts. First, the RCC found that plaintiff was bound by the submission agreement, the Beis Din's rulings, and the trial court's judgments confirming the RCC's continuing jurisdiction to resolve disputes related to the production of documents, "including the limitation on future productions" contained therein. With respect to plaintiff's June 2011 letter, the RCC found it demanded "all books and records." The arbitrators ruled that the portion of plaintiff's demand seeking documents that were generated before 2009 constituted an attempt to violate the 2009 Award, in which the RCC had ruled that nothing more need be produced for the period before 2009. The arbitrators found the brothers had regularly produced documents of the same entities to plaintiff from 2001 through 2011 pursuant to the 2009 Award, and so defendants need not offer for inspection any more documents generated before January 2012. Notwithstanding defendants' proper production of documents to plaintiff, the arbitrators found that plaintiff had "repeatedly made

7

duplicative demands for documents, often in threatening language and with unrealistic time limitations." The RCC next found that plaintiff's demand contained no time limitations. Thus, "to avoid further controversies," the arbitrators included three paragraphs describing the documents that defendants were to provide plaintiff "to satisfy all obligations to [plaintiff]." Defendants need only make one production per year, of those documents generated during the immediately preceding year, at the office of the brothers' accountant or by direct delivery to plaintiff's accountant. As before, the Beis Din retained jurisdiction.

In the second part of its award, the RCC repeated its findings above,[5] and cited plaintiff's demand, which encompassed the production of " 'all' " books and records for every entity, *without any time or other limitation*," and the portions of the submission agreement that provided " '[*a*]*ny* disputes concerning the production of said documents shall be resolved by the RCC.' " (Italics added.) Accordingly, the Beis Din denied and dismissed all of plaintiff's claims. The RCC ruled that the monthly reports "constitute a sufficient means of accounting to [plaintiff] *in the future*." (Italics added.)

Plaintiff filed two petitions to vacate the two 2012 Awards. Plaintiff asserted that the arbitrators *exceeded their powers* by denying him rights protected by the Corporations Code, for "*in-person* inspection" of the entities' books and records. (Italics in original.) The trial court denied the motions and confirmed both awards. Plaintiff filed his timely appeals.

CONTENTIONS

Plaintiff contends that the RCC exceeded its powers by deciding issues the parties did not agree to arbitrate.

---

[5] Indeed, the Beis Din observed that since 2002, it has been actively involved in resolving continuing disputes relating to plaintiff, defendants, and the entities, based on the authority of the submission agreement and had issued awards concerning the parties in July 2005, September 2006, August 2008, May 2009, July 2010, and March 2011.

DISCUSSION

1. *Plaintiff agreed to arbitrate the disclosure of the entities' documents.*

As our earlier opinion explained, "[t]he powers of an arbitrator derive from, and are limited by, the agreement to arbitrate. [Citation.]" (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 375 (*Advanced Micro Devices*).) If an arbitration agreement exists, arbitration is the default, " ' " 'unless it is clear that the arbitration clause cannot be interpreted to cover the dispute.' " [Citation.]' [Citation.]" (*California Correctional Peace Officers Assn. v. State of California* (2006) 142 Cal.App.4th 198, 205.) " '[A]mbiguities in the scope of arbitration are resolved in favor of coverage. [Citations.]' [Citation.]" (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 542 (*Ajida*).)

The power of the courts to vacate an arbitration award is very circumscribed. The ground on which plaintiff relies to vacate the 2012 Awards is that found in Code of Civil Procedure section 1286.2, subdivision (a)(4), namely that the arbitrators "exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

To determine whether the arbitrators exceeded their powers here, " 'we review the trial court's decision de novo, but we must give substantial deference to the arbitrator[s'] own assessment of [their] contractual authority. [Citation.]' [Citation.]" (*Kelly Sutherlin McLeod Architecture, Inc. v. Schneickert* (2011) 194 Cal.App.4th 519, 528, quoting from *Advanced Micro Devices, supra*, 9 Cal.4th at p. 376, fn. 9.) We must " 'refrain from substituting [our] judgment for the arbitrator[s'] . . . .' [Citation.] In short, we apply 'a rule of substantial deference to the arbitrators' jurisdictional determinations. [Citation.]' [Citation.]" (*Ajida, supra*, 87 Cal.App.4th at p. 542.)

a. *As plaintiff's 2009 request acknowledged, the submission agreement granted the RCC the power to arbitrate plaintiff's demand for access to the entities' business records.*

Viewing the submission agreement, we conclude that it affords very broad powers to the arbitrators who did not exceed its scope. As his earlier complaints did, plaintiff's

9

most recent complaint seeks an accounting and the entities' business records. The submission agreement declares the "intention of each undersigned party that *all claims and disputes concerning the subject matter hereof* shall be fully and finally resolved by the execution of this instrument." (Italics added.) The submission agreement defines the parties' controversy as "[a] comprehensive settlement of *all claims and cross claims*," including ownership interests in the entities. (Italics added.) The submission agreement expressly provided for the exchange of the same entities' accounting books and records, including those not yet identified, without temporal limitation. It also designated the RCC as the arbiter of requests for the production of additional documents, and in its Exhibit B states that "[*a*]*ny disputes concerning the production of said documents shall be resolved by the RCC*." (Italics added.) The submission agreement's language is sufficiently broad to encompass any disputes that have a significant connection with the parties' relationship, and specifically includes the production or inspection of the entities' books and records. The language is expansive enough to include " ' "all controversies, whether legal, factual, equitable, contractual or tortious, having their roots in the [parties'] relationship." ' [Citations.]" (*Ajida*, *supra*, 87 Cal.App.4th at pp. 543-544 [" '[a]ny disputes over this Agreement . . . shall be resolved by final and binding arbitration' " is sufficiently broad to include all disputes]; see also Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2013) § 5:215.5a, p. 5-165 (Knight).)

   b. *The submission agreement also covered future disputes over access to documents.*

   Plaintiff contends that the parties' submission agreement presented only existing issues for arbitration, whereas the claim here is a new dispute not covered by the submission agreement. He repeatedly insists the RCC does not have the power to arbitrate "unknown future claims," and argues that whereas the 2005 and 2009 Awards concerned "the *exchange* of documents," that this newest lawsuit involves an entirely different substantive right, namely enforcement of "his Corporations Code inspection rights." (Italics added.) To state the contention is to demonstrate its absurdity.

10

The arbitrator's continuing authority is drawn both from the parties' agreement to arbitrate their disputes and from the nature of the remedy itself. (*Ajida*, *supra*, 87 Cal.App.4th at p. 547.) In resolving the question of whether the submission agreement encompassed future disputes, we again "consider whether the provisions in the award that compel future arbitration . . . bear 'some rational relationship to the contract . . . .' " (*Id.* at p. 544, quoting from *Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 381.) We have already determined that the scope of the submission agreement encompassed the exchange and production of the entities' accounting and business documents. The submission agreement contains no limitation on the time span of the documents to which plaintiff was entitled. Indeed, the submission agreement covers "[a]ny disputes concerning production of" the same categories of documents plaintiff seeks now. Furthermore, among the relief contained in the 2005 Award was an order that defendants were to continue maintaining the records, without a specified end date. The arbitrators then retained jurisdiction over "implementation" of its rulings, including the production of those very same types of documents plaintiff seeks now. Thus, the 2005 Award was not static; the relief granted necessarily required *future* document productions and conferred jurisdiction to implement the Awards in the future. Whether the entities' books, records, and accounting information are provided by way of a document exchange on the one hand, or are based on a right contained in the Corporations Code to inspect documents on the other hand, is a distinction without a difference; either way the RCC had the express continuing power to implement the entities' release to plaintiff of those very same types of documents.

Whatever doubts plaintiff may have about whether future document production fell within the scope of the submission agreement, plaintiff's 2009 submission clearly constitutes his recognition of the RCC's ongoing jurisdiction over the entities' document production obligation. " 'The parties may submit for decision issues they were not contractually compelled to submit to arbitration. In such event, courts look both the contract *and* to the scope of the submissions to determine the arbitrator's authority. [Citation.]' [Citation.]" (*Porter v. Golden Eagle Ins. Co*. (1996) 43 Cal.App.4th 1282,

11

1291.)  In 2009, *plaintiff* asked the arbitrators to order defendants to produce the same entities' books, records, and accounting information he seeks now, claiming an "*unconditional* right to access to all documents of all the entities" "on a continuous monthly basis" until the fee is "no longer charged or the properties [are] sold."  (Italics added.)  Plaintiff's 2011 document claims were not "unknown."  In short, plaintiff's act of returning to the arbitrators in 2009 constitutes his acknowledgement that the Beis Din had the ongoing power to arbitrate his demands for the entities' documents into the future.  He cannot be heard to deny it now.  Plaintiff's own submissions to the RCC are extremely broad and justify the arbitrators' conclusion that plaintiffs' 2011 requests fell within the scope of his 2005 and 2009 submissions.  Therefore, the trial court did not abuse its discretion in rejecting plaintiff's claim that the 2012 Awards were made in excess of the RCC's powers.

     2. *The RCC did not act in excess of its jurisdiction in issuing the 2012 Awards because those Awards do not violate public policy.*

     Plaintiff contends we may review the 2012 Awards because the Awards denied his "*fundamental statutory right* of access to records by denying [him] any right to inspect or access [to] the *original* business records of the . . . Entities."  (Italics added.)  He contends that there is a "fundamental public policy of protecting the rights of partners, limited partners, and members of limited liability companies," which public policy is embodied in the Corporations Code's provisions requiring access to and inspection of business records of partnerships, corporations, and limited liability companies.   He cites Corporations Code sections 16403, subdivision (b), 15903.04, subdivision (a), and 15901.11.  (See fn. 4, *ante*.)  Plaintiff's contention is specious.

     Admittedly " 'courts may, indeed must, vacate an arbitrator's award when it violates a party's statutory rights or otherwise violates a well-defined public policy.' [Citations.]" (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 37.)  However, we discern no statutory indication that plaintiff has any right to *originals*.  The Corporations Code contemplates the use of copies (see, e.g., Corp. Code, §§ 16403, subd. (a) [partnerships must keep books and records in "form capable of being converted into

12

clearly legible tangible form"]; 15903.04, subd. (b) [authorizing electronic transmission of documents limited partners may inspect]).  He has been receiving copies.

More important, plaintiff cites us to no case or statute that makes an "*explicit expression of public policy*" (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 438) behind the Corporations Code's requirements of access to books and records.  (Italics added.)  As our Supreme Court stated, "Without an explicit legislative expression of public policy, however, courts should be reluctant to invalidate an arbitrator's award on this ground.  The reason is clear: the Legislature has already expressed its strong support for private arbitration and the finality of arbitral awards in title 9 of the Code of Civil Procedure.  (§ 1280 et seq.)  Absent a clear expression of illegality or public policy undermining this strong presumption in favor of private arbitration, an arbitral award should ordinarily stand immune from judicial scrutiny."  (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 32.)

For the foregoing reasons, the 2012 Awards challenged by plaintiff are not subject to judicial review.

DISPOSITION

The judgments are affirmed.  Respondents are awarded costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



ALDRICH, J.



We concur:



KLEIN, P. J.



KITCHING, J.

14