[Civ. No. 37844. Second Dist., Div. Two. Nov. 18, 1971.]

REX PAUD, Plaintiff and Respondent, v.
ALCO PLATING CORPORATION, Defendant and Appellant.

364

## COUNSEL

Sheppard, Mullin, Richter & Hampton, David A. Maddux and David S. Bradshaw for Defendant and Appellant.

Ansell & Ansell and Herbert Ansell for Plaintiff and Respondent.

## OPINION

**FLEMING, J.**—Alco Plating Corporation (Alco) appeals a judgment affirming an arbitration award in favor of Rex Paud, individually and in a representative capacity for and on behalf of Metal Polishers, Buffers, Platers and Helpers International Union, Local 67, AFL-CIO (Union). The arbitrator awarded $888.14 for accumulated vacation pay to 11 Alco union-member employees.

### FACTS

Union entered into a collective bargaining agreement with Cadmium Nickel Plating, a division of Great Lakes Industries, Inc., (Cadmium) in 1959. The agreement contained provisions for arbitration of disputes and for vacation pay for union members based on total years of "continuous service." The agreement was to be effective until 30 May 1966.

Cadmium's business of electroplating metal products was operating unprofitably. On 4 November 1965 Alco bought the physical assets of Cadmium and assumed Cadmium's obligations for insurance and truck leases. That day Cadmium terminated its employees, paid them accumulated vacation pay, and told them "if they wanted employment to come

back and make application with the new employer." Alco commenced business at the Cadmium facility on 8 November 1965. It hired all of Cadmium's former employees, solicited customers from Cadmium's files, operated under Cadmium's name for a time, and engaged in electroplating metal products.

Alco maintained that it was not bound by the collective bargaining agreement between Cadmium and Union. Alco set up its own vacation pay schedule based on length of employment but did not make clear whether length of employment included time worked for Cadmium.

Union insisted Alco was bound by the collective bargaining agreement and initiated a suit to compel arbitration. Union dismissed the suit, however, after reaching a settlement with Alco in July 1966. In that settlement Union waived "any and all claims" against Alco, and Alco recognized Union and agreed to commence negotiations for a new collective bargaining agreement. Rancor rather than agreement developed, and proceedings were instituted before the National Labor Relations Board. The NLRB found that Alco had not bargained in good faith and that both Alco and Union had engaged in unfair labor practices. These findings were upheld in *Alco Plating Corporation* v. *NLRB* (9th Cir. 1971) 436 F.2d 1378.

On 1 August 1966 Alco informed a Union steward that no credit for Cadmium employment time would be given in determining Alco vacation pay. Alco later agreed to give credit for Cadmium employment time in determining vacation pay but only as of 1 August 1967.

Union initiated the instant action in July 1968. Union petitioned the trial court to compel Alco to arbitrate the dispute over what time was to be credited in determining vacation pay. On 24 February 1969 the trial court found:

"1. The employment industry located at 1400 Long Beach Avenue, Los Angeles, California remained substantially intact after the transfer of ownership from Cadmium Nickel Plating, division of Great Lakes Industries to Respondent Alco Plating Corporation and consequently the latter constitutes a successor to the predecessor. 2. The Collective Bargaining Agreement entered into between Petitioner Union and Cadmium Nickel Plating, division of Great Lakes Industries, Inc. on December 5, 1963 and October 14, 1965, is binding upon and applicable to the operations of Respondent Alco Plating Corporation. . . ."

The trial court ordered Alco to arbitrate the following questions: "(a) Are the following employees, to wit: Frank James, Daniel Crump,

Austin Finley, Manuel Caracoza, Isaac Williams, Roosevelt Walker, Richous Jackson, Gil Gomez, Jesus Martinez, C. T. Andrews and Angel Caracoza, entitled to accumulated vacation pay under the Collective Bargaining Agreement executed between Petitioner Union and Great Lakes Industries, Inc., on December 5, 1963, and on October 14, 1965, and any extensions thereof or under the oral contracts of hire to the extent the terms of the written contract are incorporated therein? (b) If the answer to the above is yes, then what is the correct amount of money owed to such employees?"

The arbitrator subsequently heard the evidence and found that individual contracts for hire were created between Alco and Union members when the members became Alco employees on 8 November 1965. These individual contracts for hire were superceded by the Cadmium-Union collective bargaining agreement found (retroactively) to have been in effect between 8 November 1965 and the expiration date of the agreement, 30 May 1966. The individual contracts for hire continued and became effective again after 30 May 1966. Alco had announced its own vacation pay plan based on years of employment; in the circumstances, "years" was reasonably understood to include years with Cadmium, too. On 1 August 1966 Alco announced it would not credit years with Cadmium, and the individual contracts for hire no longer included those years. On 1 August 1967 Alco agreed to include the Cadmium years and since that time the individual contracts for hire have included those years in determining vacation pay. The arbitrartor thus concluded that the 11 Alco union-member employees in question were entitled to vacation pay crediting Cadmium employment time from 8 November 1965 through 30 May 1966 to 1 August 1966 and from 1 August 1967 to the present. The parties stipulated the amount due to be $888.14.

## ISSUES

■ Alco contends (1) that Alco was not bound by the Cadmium-Union collective bargaining agreement, (2) that Union waived all claims against Alco, (3) that the arbitrator exceeded his jurisdiction in awarding benefits accruing after the termination of the collective bargaining agreement, (4) that the award was in conflict with the terms of the agreement, and (5) that the trial court committed reversible error in affirming the award without filing findings of fact and conclusions of law.

### 1. *Was Alco bound by the Cadmium-Union agreement?*

Yes. ■ Where there is substantial similarity of operation and continuity of identity of the business enterprise before and after a change in

ownership, a collective bargaining agreement containing an arbitration provision entered into by the predecessor-employer is binding on the successor-employer. (*John Wiley & Sons* v. *Livingston* (1964) 376 U.S. 543, 551 [11 L.Ed.2d 898, 905, 84 S.Ct. 909]; *Wackenhut Corp.* v. *International U., United Plant Guard W.* (9th Cir. 1964) 332 F.2d 954, 958.)

■ There is ample support in the record for the trial court's conclusion that Cadmium remained substantially intact after the transfer of ownership to Alco. Alco used the same facility, employed the same people, used the same name, solicited the same customers, and engaged in the same business. Ownership and a few management personnel were the only substantive changes. New investment in plant and machinery by Alco and failure to assume most of Cadmium's liabilities did not effect a break in the continuity of the enterprise as far as the employees were concerned.

Alco argues that there was no intent by Union and Cadmium to have the collective bargaining agreement apply to Cadmium's successor because bargaining history shows that the Union unsuccessfully attempted to get Cadmium to agree to a provision expressly making the agreement applicable to Cadmium's successors. Bargaining history may be used to determine whether a particular dispute was intended to be arbitrated under a collective bargaining agreement (*Communications Wkrs. Of Amer.* v. *Pacific N.W. Bell Tel. Co.* (9th Cir. 1964) 337 F.2d 455), but it is not relevant to the question before the trial court whether the facts showed a substantial similarity of operation and continuity of identity. In any event, Cadmium's refusal to agree to Union's proposed provision hardly proves the intent of Cadmium and Union to achieve the opposite of the terms of that provision.

## 2. Did Union waive its claims against Alco?

No. ■ Alco contends first that Union expressly waived any claims it had against Alco in the agreement Union and Alco signed in July 1966. In that agreement Alco promised to bargain in good faith and to recognize Union as the sole bargaining agent for Alco's production and maintenance employees. Yet that same day a petition to decertify Union was being circulated. The NLRB and the federal court found that both parties engaged in unfair labor practices. The agreement thus proved to be no agreement at all and therefore was not binding on either Union or Alco. In addition, the arbitrator found that Alco had renounced any claim of waiver under the agreement of 28 July.

■ Alco also contends Union impliedly waived its claim by delaying for two years before bringing this action. The question of waiver is one of

fact for the trier of fact (*Martinez Typographical Union* v. *Silversun Corp.*, 256 Cal.App.2d 255, 260 [63 Cal.Rptr. 760]), but Alco never presented the question to the arbitrator or the trial court. The issue cannot be raised for the first time on appeal.

### 3. *Did the arbitrator exceed his jurisdiction?*

No. ■ Alco contends that the arbitrator exceeded his jurisdiction by awarding vacation pay accruing after the expiration of the collective bargaining agreement. But the arbitrator was merely acting within the scope of the reference from the trial court. The trial court asked the arbitrator to determine if the employees were entitled to accumulated vacation pay under the collective bargaining agreement or under "any extension thereof or under the oral contracts of hire to the extent the terms of the written contract are incorporated therein."

■ A party may be compelled to submit a dispute to arbitration only where he has contracted in writing to do so, but the written agreement may be extended or renewed by an oral or implied agreement. (*Berman* v. *Renart Sportswear Corp.*, 222 Cal.App.2d 385, 388 [35 Cal.Rptr. 218].) ■ Code of Civil Procedure section 1280, subdivision (f) reads: "(f) 'Written agreement' shall be deemed to include a written agreement which has been extended or renewed by an oral or implied agreement." There was evidence here to suggest that such oral or implied agreements were made by Alco with the employees. Therefore the trial court properly referred its questions to the arbitrator.

Once the arbitrator properly had before him the questions asked by the court, it was up to him to decide the extent to which the oral or implied agreements extended the right to arbitration beyond the termination of the written agreement. Such questions of "procedural arbitrability" are properly left to the arbitrator. (*John Wiley & Sons* v. *Livingston*, 376 U.S. 543, 557 [11 L.Ed.2d 898, 909, 84 S.Ct. 909].)

The foundational questions are: What was submitted to the arbitrator and what did he decide? (*O'Malley* v. *Petroleum Maintenance Co.*, 48 Cal.2d 107, 111 [308 P.2d 9].) Here the arbitrator was properly asked to determine accumulated vacation pay under the collective bargaining agreements and under any extensions thereof or under the oral contracts of hire. The arbitrator answered that question. The merits of his determination are not subject to judicial review. (*Atchison, T. & S.F. Ry. Co.* v. *Brotherhood R.R. Trainmen*, 229 Cal.App.2d 607, 616 [40 Cal.Rptr. 489].)

### 4. *Did the award conflict with the agreement?*

No. ■ Alco contends the award conflicts with the agreement because the agreement calls for vacation pay to be based on "continuous service." Alco argues that because Cadmium fired its employees and Alco rehired them, their service was not "continuous," and should be measured only from the date Alco hired the employees. This argument is without merit because it ignores the basic rationale of *John Wiley & Sons* v. *Livingston*, 376 U.S. 543 [11 L.Ed.2d 898, 84 S.Ct. 909], and related cases: mere change in ownership of an enterprise should not affect the bargained-for rights of the employees. For this concept to be meaningful, the substance of bargained-for rights, and not just the form, must be retained. Mere change in ownership not only did not affect the employees' right to vacation pay based on "continuous service," but it also did not affect the existing measurement of that continuous service.

### 5. *Were the findings of fact and conclusions of law sufficient?*

Yes. ■ The judgment of the trial court stated that the court already filed its findings of fact and conclusions of law on 24 February 1969 and set out the amounts, totaling $888.14, due 11 Alco union-member employees. The findings and conclusions of 24 February 1969 are set out in the FACTS, *supra.* Alco contends that these findings and conclusions are insufficient, and that because Code of Civil Procedure section 1291 requires that findings of fact and conclusions of law be made, the judgment must be reversed. We disagree. Code of Civil Procedure section 1291 must be read in conjunction with Code of Civil Procedure section 632. (*Johnston* v. *Security Ins. Co.,* 6 Cal.App.3d 839, 844 [86 Cal.Rptr. 133].) Section 632 provides that the trial court need not make written findings and conclusions if they are not requested. None were requested here. Furthermore, elaborate findings and conclusions by the trial court were unnecessary, since the trial court was obviously adopting the findings and conclusions of the arbitrator. The arbitrator spelled out his findings and conclusions in intricate detail. Alco thus had sufficient basis to understand the trial court's judgment and to launch its appeal.

The judgment is affirmed.

Herndon, Acting P. J., and Compton, J., concurred.