[Civ. No. 33575. First Dist., Div. Four. Aug. 21, 1974.]

RETAIL CLERKS UNION, LOCAL 775 et al.,
Plaintiffs and Appellants, v.
PURITY STORES, INC., et al., Defendants and Respondents.

## COUNSEL

Davis, Cowell & Bowe, Robert P. Cowell and Roland C. Davis for Plaintiffs and Appellants.

Thelen, Marrin, Johnson & Bridges, Fielding H. Lane, Littler, Mendelson & Fastiff, George J. Tichy II and Alan B. Carlson for Defendants and Respondents.

## OPINION

**CHRISTIAN, J.**—Several local unions of the Retail Clerks Union and of the Retail Store Employees Union appeal from a judgment which denied their petition to compel arbitration pursuant to collective bargaining agreements entered into by appellants and Purity Stores, Inc. (hereinafter "Purity"). An order to arbitrate was also sought in regard to Northern California Supermarkets, Inc. (hereinafter "NCS").

Purity formerly operated numerous retail food stores throughout Northern California. Appellants, representing the employees of Purity, had entered into collective bargaining agreements with Purity. Each agreement contained a clause calling for arbitration of "all claims, disputes and grievances arising between the parties during the term of this Agreement over the construction and application of this Agreement, or relating to working conditions arising out of this Agreement, . . ." Each agreement also contained the following clause providing for enforcement of the agreement if Purity was replaced by a successor: "NEW OWNER: This Agreement shall be binding upon the successors and assigns of the parties hereto. . . . [E]mployee benefits provided for herein shall not be affected by the sale or transfer of the business for those employees who are retained by a new Employer for a period of more than thirty (30) days. For employees who choose to be employed by such new owner, such thirty (30) day period shall be considered a probationary period during which

time employees may be terminated without recourse to the grievance procedure, unless such termination is in violation of [sections of the collective bargaining agreement which deal with discharge for discriminatory reasons or for union activities]."

On June 30, 1972, while the agreements just described were in force, Purity sold 18 retail grocery stores to NCS, transferring equipment, inventory, supplies, motor vehicles, accounts receivable, trade names, trademarks, and Purity's leaseholds of realty occupied by the stores. On July 1, 1972, NCS began operating the 18 stores.

NCS immediately offered all employees at the 18 stores continued employment on a 30-day probationary basis; some employees accepted the offer while others did not. During the 30-day period some probationary employees were discharged. Appellants objected to the discharges and sought arbitration.

After Purity sold its stores to NCS, no performance was required of it under the collective bargaining agreements; accordingly appellants do not attack the judgment in favor of Purity. Appellants assert, however, that NCS, as the successor of Purity, is bound by the arbitration provision in the collective bargaining agreements. When a party petitions for an order to compel arbitration, the court must order arbitration "if it determines that an agreement to arbitrate the controversy exists, . . ." (Code Civ. Proc., § 1281.2.) ■ A successor of an employer is bound by the arbitration provision in a collective bargaining agreement executed by its predecessor if "there is substantial similarity of operation and continuity of identity of the business enterprise before and after a change in ownership." (*Paud* v. *Alco Plating Corp.* (1971) 21 Cal.App.3d 362, 367-368 [98 Cal.Rptr. 706]; cf. *Holayter* v. *Smith* (1972) 29 Cal.App.3d 326, 333-335 [104 Cal.Rptr. 745].)

The doctrine of *Holayter* and *Paud* derives from *John Wiley & Sons* v. *Livingston* (1964) 376 U.S. 543 [376 L.Ed.2d 898, 84 S.Ct. 909], a case in which the United States Supreme Court held that under federal law, a successor employer was bound by the arbitration provision in a collective bargaining agreement executed by its predecessor. Respondent NCS asserts that *Holayter* and *Paud* should not be followed because "[i]n light of the Supreme Court opinion in [*NLRB* v. *Burns Security Services* (1972) 406 U.S. 272], it may be critically questioned whether *John Wiley & Sons,* . . . now has any validity or viability beyond the limited facts presented in that case." This argument is not sound. The court in *Holyater* considered the effect of *Burns* on the *Wiley* doctrine and concluded that the doctrine

"was held not to be applicable to a situation where there was no merger, no sale of assets and no dealings whatsoever between the successor employer and its predecessor, and no agreement by the successor to assume a collective bargaining agreement negotiated by the predecessor." (*Holayter* v. *Smith, supra,* 29 Cal.App.3d at p. 332.) Moreover, *Burns* did not involve a merger or sale of assets. In that case, a service contract between the Wackenhut Corporation and the Lockheed Aircraft Service Company had expired. Burns Security Services bid for and obtained the service contract with Lockheed and then hired 27 of 42 former employees of Wackenhut. Burns explicitly stated that it had no intention of assuming Wackenhut's agreement with the union, just as it assumed no other obligations of Wackenhut. Wackenhut was in fact a competitor of Burns which had been outbid by Burns for the Lockheed contract. Consequently, Burns was a very different type of successor employer than the successor employers in *Wiley, Holayter,* and here. (See *NLRB* v. *Burns Security Services, supra,* 406 U.S. at pp. 285-291 [32 L.Ed.2d at pp. 71-75, 92 S.Ct. 1571]; *Holayter* v. *Smith, supra,* 29 Cal.App.3d at p. 336.)

■ NCS purchased the retail grocery stores, equipment, supplies, inventory, accounts receivable, trade names, and trademarks of Purity. After commencing operation of the stores, NCS continued to make contributions to appellants' welfare and pension funds as required by the collective bargaining agreements. It used the same collective bargaining agent that Purity had used and invoked the grievance procedure for settling some disputes with appellants. Throughout these proceedings NCS claimed that it was a "new owner" of the retail grocery operation as the term is used in the collective bargaining agreements. There was thus evidence of substantial similarity of operation and continuity of the identity of the business. (Cf. *Holayter* v. *Smith, supra,* 29 Cal.App.3d at pp. 329-330, 335-336; *Paud* v. *Alco Plating Corp., supra,* 21 Cal.App.3d at pp. 367-368.)

Respondent NCS contends that it should not be considered a successor employer because there is no evidence that a majority of Purity employees entered the employment of NCS. It is true that in *Howard Johnson Co.* v. *Detroit Local Joint Executive Board* (1974) 417 U.S. 249, 263 [41 L. Ed.2d 46, 57, 94 S.Ct. 2236] the United States Supreme Court held, applying federal law, that "continuity of identity in the business enterprise necessarily includes . . . a substantial continuity in the identity of the work force across the change in ownership." In the present case a considerable number of employees of Purity were evidently retained by NCS. All Purity employees were initially offered employment by NCS; some

who accepted were later discharged by NCS. Moreover, NCS continued to deal with appellants as the representatives of the NCS employees.

Appellants contend that the trial court, in concluding that NCS was exempt from the arbitration requirement by the "new owner" provision in the collective bargaining agreements, went beyond determining whether NCS was required to submit to arbitration and, instead, determined the merits of an arbitrable controversy.

The collective bargaining agreements all provided for arbitration of "all claims, disputes and grievances arising between the parties during the term of this Agreement over the construction and application of this Agreement." ■ The issues that appellants seek to arbitrate evolve from NCS's application of the new owner provision, which allows a new owner to discharge employees during the 30-day probationary period "without recourse to the grievance procedure" unless the discharge violates sections in the collective bargaining agreements that deal with discharge for discriminatory reasons or for union activities. Appellants contend that the new owner provision does not apply because a major official and stockholder in Purity now holds a similar position in NCS and because NCS uses the same bargaining agent that Purity used. It is also contended that the new owner provision allows discharge only if an employer concludes that the employee has not shown the ability to perform the job satisfactorily. These arguments, appellants maintain, involve "construction and application" of the new owner provision and therefore come within the scope of the arbitration clause. Consequently, appellants claim that all discharges of employees during the probationary period are arbitrable, including discharges for discriminatory reasons or for union activity.

■ Doubts as to whether an arbitration clause applies are to be resolved in favor of arbitration. (*Posner* v. *Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169, 175 [14 Cal.Rptr. 297, 363 P.2d 313].) Arbitration should be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (*O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 491 [30 Cal.Rptr. 452, 381 P.2d 188], quoting *Steelworkers* v. *Warrior & Gulf Co.* (1960) 363 U.S. 574, 582-583 [4 L.Ed.2d 1409, 1417, 80 S.Ct. 1347].) Nevertheless, the court did not err in its determination that arbitration was limited by the "new owner" provision.

■ In acting upon a petition to compel arbitration, a court must determine whether the collective bargaining agreement requires arbitration. (Code Civ. Proc., § 1281.2; *O'Malley* v. *Wilshire Oil Co.*, *supra*, 59 Cal.

2d at p. 491; see Cox, *Reflections Upon Labor Arbitration* (1959) 72 Harv.L.Rev. 1482, 1511.) The court therefore must construe the provisions of the agreement defining the scope of arbitration, to determine whether the parties have excluded the particular grievance from arbitration. (*Steelworkers* v. *Warrior & Gulf Co., supra,* 363 U.S. at pp. 584-585 [4 L.Ed.2d at pp. 1418-1419, 80 S.Ct. 1347]; *O'Malley* v. *Wilshire Oil Co., supra,* at pp. 490-491.)

The "new owner" provision here in question permits dismissal of employees by the new owner during the 30-day probationary period "without recourse to the grievance procedure," except in the case of discharge for discriminatory reasons or for union activity. The "grievance procedure" established in the agreements culminates in arbitration. Therefore, the "new owner" provision excludes arbitration of certain disputes arising from dismissal of probationary employees by a "new owner."

The trial court determined that NCS was a "new owner." Although that determination involved construction of a term in the collective bargaining agreement (an act relegated to arbitration by the arbitration clause), the court could not avoid making that determination if it was to carry out its duty of determining whether the dispute was arbitrable. (See *Unimart* v. *Superior Court* (1969) 1 Cal.App.3d 1039, 1045 [82 Cal.Rptr. 249].)

An arbitrator may, of course, be given the power to determine his own jurisdiction, i.e., to determine the arbitrability of a dispute. (*Posner* v. *Grunwald-Marx, Inc., supra,* 56 Cal.2d at p. 181.) But such a relegation of power must appear in the collective bargaining agreement. (*McCarroll* v. *L.A. County etc. Carpenters* (1957) 49 Cal.2d 45; 65-66 [315 P.2d 322], cert. den., 355 U.S. 932 [2 L.Ed.2d 415, 78 S.Ct. 413].) If the agreement provides for an arbitrator to decide arbitrability, the court may not decide that issue; if the agreement does not, the court must. (See Cox, *Reflections Upon Labor Arbitration, supra,* 72 Harv. L.Rev. at pp. 1508-1510.)

The agreements in this case do not subject the question of arbitrability to determination by the arbitrator. The court was obliged to determine the question of arbitrability; that necessarily included the question whether NCS was a new owner. (See *McCarroll* v. *L.A. County etc. Carpenters, supra,* 49 Cal.2d at pp. 65-66; *Steelworkers* v. *Warrior & Gulf Co., supra,* 363 U.S. at p. 583, fn. 7 [4 L.Ed.2d at p. 1418].

There was evidence that the president of NCS was a vice-president and stockholder of Purity and that NCS used the same bargaining agent

used by Purity. There was no evidence of any other relationship between the two companies. Therefore, substantial evidence supports the determination that NCS was a new owner within the meaning of the agreements.

■ Appellants alleged in their petition that the grievances included, among others, the discharge of employees for "discriminatory" reasons (including advanced age) and for union activity. The new owner provision does not exclude arbitration of such grievances; hence, arbitration should have been ordered as to such issues.

The judgment for Purity is affirmed. The judgment for NCS is reversed with directions to enter a new judgment ordering arbitration of any grievances based on discrimination and on union activities in accordance with the terms of the "new owner" clause in the collective bargaining agreement.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied September 20, 1974, and the petition of respondent Northern California Supermarkets, Inc. for a hearing by the Supreme Court was denied October 17, 1974.