[No. B156183. Second Dist., Div. Eight. Nov. 18, 2002.]

MAGNESS PETROLEUM COMPANY, Plaintiff and Appellant, v. WARREN RESOURCES OF CALIFORNIA, INC., et al., Defendants and Respondents.

COUNSEL

Gilmore, Wood, Vinnard, Chittick & Magness, David M. Gilmore and Hilary A. Chittick for Plaintiff and Appellant.

Hanna & Morton, Edward S. Renwick; Clements, O'Neill, Pierce, Nickens & Wilson and Jesse R. Pierce for Defendants and Respondents.

OPINION

BOLAND, J.—

SUMMARY

This case presents the question whether Magness Petroleum Company and Warren Resources of California, Inc., partners in a joint venture, are required to arbitrate their current dispute before the American Arbitration Association (AAA), or before G. Keith Wisot, a retired judge associated with Judicial Arbitration and Mediation Services, Inc. (JAMS). The joint venture agreement required arbitration of the current dispute before AAA. However, the parties stipulated in writing to arbitrate an earlier dispute before Judge Wisot. During pendency of the earlier arbitration, Judge Wisot concluded—based on his recollection and notes of an arbitration session—that the parties orally agreed to his jurisdiction over all future disputes.

We conclude an oral modification of a written agreement to arbitrate is not specifically enforceable, and the trial court therefore erred in denying the

petition of Magness Petroleum Company to compel arbitration before AAA in accordance with the written agreement of the parties.

## FACTUAL AND PROCEDURAL BACKGROUND

Magness Petroleum Company is a joint venturer with Warren Resources of California, Inc., and several related entities under the terms of a written agreement. The joint venture relates to a multimillion-dollar drilling program for the production of oil and gas in an oilfield known as the Wilmington Town Unit. Disputes arose within a few months after the joint venture agreement was signed, and the parties have agreed on little since that time. This appeal raises the single question whether an oral agreement to arbitrate the current dispute before Judge Wisot of JAMS is enforceable under Code of Civil Procedure section 1281 et seq. The resolution of this point requires a recitation of circumstances surrounding the arbitration of previous disputes between the parties.

### 1. *The first dispute.*

Magness sued Warren in September 1999, asserting claims for breach of contract, dissolution of the joint venture, an accounting and declaratory relief. Warren sought an order compelling arbitration. The arbitration clause in the joint venture agreement stated that any dispute was to be "determined and settled by binding arbitration in the State of California, pursuant to the rules of the American Arbitration Association then in effect."

On December 2, 1999, the parties through counsel entered into a written "Stipulation and Agreement To Arbitrate." In that document, the parties agreed to submit to binding arbitration "the various claims, disputes and controversies which have arisen between [them] with respect to or arising from these agreements and which will be presented at the arbitration hearing, including without limitation, those referenced in the Complaint, and hereby appoint The Honorable Keith G. Wisot (Ret.) as the neutral arbitrator to decide all of the disputes hereby submitted, to make a final determination as to all such disputes and to make his award as provided in this Stipulation and Agreement."

Hearings were held in January and February 2000, with final arguments on February 28, 2000. Judge Wisot rendered his findings orally on March 3, 2000. The parties submitted proposed modifications to the findings, and the arbitrator signed an interim award on June 19, 2000. Accounting issues were submitted to Arthur Andersen, which issued a report on November 17, 2000. After further briefing, a hearing and argument on the accounting issues,

Judge Wisot issued a final award on February 19, 2001. In that award, the arbitrator found the joint venture was valid and enforceable, declared various rights and duties of the parties under the joint venture agreement, resolved accounting claims with a net award to Warren, and made the following reservation of jurisdiction: "The Arbitrator further reserves jurisdiction, pursuant to the parties' December 2, 1999 Stipulation and Agreement to Arbitrate, to make appropriate Orders to implement this Final Award, including Injunctive Order, as may be necessary."

2. *The second dispute.*

On May 19, 2000, a month before the interim award and nine months before the final award in the first dispute, Warren filed a document with JAMS styled as a complaint for declaratory judgment, application for temporary restraining order and application for preliminary injunction. Warren's complaint was filed with the same caption and case number as the pending first dispute. Warren sought a declaratory judgment that Magness had no right to drill any wells other than joint venture wells on the Wilmington Town Unit, and an order restraining Magness from drilling three nonjoint venture wells.

Magness responded to Warren's complaint with a motion to transfer the complaint to AAA or to dismiss it, and with an opposition on the merits, indicating in each that it was "specially appearing." Magness argued the first dispute had been tried and submitted, and the December 2, 1999 Stipulation and Agreement To Arbitrate did not cover any other disputes.

On June 6, 2000, Judge Wisot denied Warren's request for a temporary restraining order, and ordered the parties to show cause why the complaint should not be dismissed or, in the alternative, why a preliminary injunction should not issue. The show cause hearing was calendared for July 7, 2000. In the June 6 order, Judge Wisot stated the order was made pursuant to the December 2, 1999 written stipulation, and "FURTHER PURSUANT to the STIPULATION OF THE PARTIES entered between the parties and in the notes of the arbitrator on February 28, 2000 providing that the arbitrator shall retain jurisdiction over future disputes if the Joint Venture Agreement between the parties is not dissolved . . . ."

At the hearing on July 7, 2000, Judge Wisot denied Magness's motion to dismiss.[1] He then denied Warren's request for a preliminary injunction as moot, since Magness had no present intent to drill the wells. Warren then withdrew its complaint without prejudice. Judge Wisot observed that, "having determined that I do have jurisdiction for further disputes for the various disputes that may arise under the joint venture agreement, . . . I've made that determination, [and] will await some future dispute."

### 3. *The current dispute.*

On August 8, 2001, almost six months after issuance of the final award in the first dispute, Magness filed a demand for arbitration and statement of claim with AAA, seeking dissolution of the joint venture and a final accounting, or in the alternative declaratory relief as to drilling rights of the parties. Warren then filed a petition to compel arbitration before Judge Wisot. Magness opposed the petition and filed a counterpetition to compel arbitration before AAA.

A hearing was held in the trial court on November 20, 2001. On January 3, 2002, Warren's petition was granted and Magness's petition was denied. The court recited the finding in Judge Wisot's June 6, 2000 order that the parties stipulated on February 28, 2000, to his jurisdiction over future disputes. The court found that "the fact and effect of the parties' 28 February 2000 Stipulation, vesting continuing jurisdiction in Judge Wisot, is clearly evidenced" by Judge Wisot's statements and colloquies with counsel for Magness at the July 7, 2000 hearing. (See, e.g., fn. 1, *ante*.) The court also cited Judge Wisot's reservation of jurisdiction in the final award (quoted *ante*).

Magness filed both this appeal and a petition for a writ prohibiting enforcement of the trial court's order compelling arbitration before JAMS. We previously issued a writ of supersedeas staying the portion of the trial court's order compelling arbitration before Judge Wisot of JAMS, and denied Warren's motion to dismiss the appeal.

---

[1] At the hearing on July 7, 2000, and in a supporting declaration, Magness's counsel stated that in closing arguments on February 28, 2000, he had urged dissolution of the joint venture and retention of jurisdiction by Judge Wisot over the dissolution. Judge Wisot stated: "That is not the way I heard it on February 28, and that is not what I entered in my notes. [¶] And when I reflect on that, it seems to me that if I did determine that the joint venture was to be dissolved, then there is what the law calls inherent power to make orders and enforcement. [¶] . . . [¶] So I'm respectful of the limitations of my authority, but I'm not respectful of a change in the position of a party that was clearly identified on February 28, to be a stipulation to retain jurisdiction in the event that the joint venture is not dissolved. [¶] That would have been a new feature of vesting jurisdiction that would have given meaning to the party's December 2, 1999 stipulation of the various disputes. And that's what I took it to be."

DISCUSSION

The parties differ regarding the issue presented to this court for decision. Warren states the question is whether substantial evidence supports the trial court's finding of an oral stipulation to Judge Wisot's jurisdiction to hear future disputes. Magness concedes the trial court found an oral stipulation. However, it argues the stipulation was ineffective as a matter of law, because it was not placed on the record, failed to conform to minimum legal requirements for a valid stipulation, and cannot operate to modify the written agreement between the parties.[2] ▪▪▪ We believe the question is one of law: whether an oral agreement to arbitrate future disputes before a particular arbitrator may be enforced by the court on a petition to compel arbitration. We conclude it may not.

1. *The statutory scheme on its face does not permit the court to enforce an oral agreement to arbitrate future disputes before Judge Wisot, even where the oral agreement modifies a written agreement.*

An oral agreement to arbitrate is not ordinarily enforceable. The statutory scheme for the enforcement of arbitration agreements applies only to written agreements. (Code Civ. Proc., § 1281 et seq.) ▪▪▪▪ The statute expressly requires a court to order arbitration if it finds an agreement exists, "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy . . . ." (Code Civ. Proc., § 1281.2; *Law Offices of Ian Herzog v. Law Offices of Joseph M. Fredrics* (1998) 61 Cal.App.4th 672, 677 [71 Cal.Rptr.2d 771] ["the statutes permit the courts to specifically enforce only written agreements to arbitrate"].)[3] ▪▪▪ Moreover, the statute expressly describes the circumstances under which a written agreement to arbitrate is deemed to include an oral or implied provision. The term

---

[2]The only written agreements to arbitrate are in the joint venture agreement, which calls for arbitration under AAA rules, and the December 2, 1999 stipulation. The latter was specifically confined to disputes that would be "presented at the arbitration hearing" and were "hereby submitted" to Judge Wisot, for "a final determination as to all such disputes" and for "his award as provided in this Stipulation and Agreement." Warren does not argue that either of these writings constitutes an agreement to arbitrate the current dispute before Judge Wisot.

[3]The enforcement of agreements to arbitrate is distinct from the enforcement of a written arbitration award. Where the parties have arbitrated and a written award has been made, the courts may enforce the award even if the underlying agreement to arbitrate was oral. (*Law Offices of Ian Herzog v. Law Offices of Joseph M. Fredrics, supra*, 61 Cal.App.4th at p. 677 [distinguishing between statutory provisions governing the specific enforcement of a written agreement to arbitrate (§§ 1281-1281.95) and provisions governing enforcement of written awards in disputes which were arbitrated based on either oral or written agreements (§§ 1280, subd. (b), 1285-1287.6)].)

"written agreement" "shall be deemed to include a written agreement which has been extended or renewed by an oral or implied agreement." (Code Civ. Proc., § 1280, subd. (f).)

We see no basis in those words, nor has one been discovered in case law, for interpreting the statutory definition of "written agreement" to include an oral agreement revising or modifying a written agreement that has not expired.[4] First, the statute on its face addresses only a written agreement that has been "extended or renewed" by an oral agreement. No cases specifically construe this provision. However, the ordinary meaning of "extend" is "lengthen or make larger in space or time." (Oxford American Dict. of Current English (1999) p. 274.) Similarly, "renew" is defined as "revive; make new again; restore to the original state." (*Id.* at p. 677.) Neither of these definitions, nor any secondary definitions of either word, leave any room to argue that either word also means "modify," "revise" or "change." Second, the cases that cite Code of Civil Procedure section 1280, subdivision (f), do not support an interpretation that would allow oral modifications other than extensions or renewals of the original agreement. The cases are few and none are directly on point, but they have one thing in common: they uniformly involve an arbitration agreement that has expired or has been terminated, and address the question whether there was an oral or implied extension or renewal of the expired or terminated written agreement.[5] In short, the statutory definition, and the cases citing it, provide no support for the proposition that a court may enforce an oral modification of a written

---

[4]Warren does not argue that this section of the statute applies in this case. The point is addressed only to ensure a complete analysis.

[5]There are three cases:

1. In *Berman v. Renart Sportswear Corp.* (1963) 222 Cal.App.2d 385 [35 Cal.Rptr. 218], both parties admitted the existence of a written agency contract for the period ending October 31, 1962, with an arbitration clause. The dispute, however, was over an alleged subsequent oral agency agreement. The defendant denied any agreement, but contended that if there was one, it was an oral extension of the earlier written agreement and included the arbitration clause. The trial court correctly denied the defendant's petition for an order directing arbitration, because defendant's petition did not positively assert any extension of the original written contract, merely stating there were "alleged" extensions or renewals of the contract. Without a positive position by defendant, the trial court could not determine whether a contract to arbitrate existed. (*Id.* at p. 389.) The court, after quoting Code of Civil Procedure section 1280, subdivision (f), observed that "the existence of such an oral extension is still an essential prerequisite to arbitration." (*Berman,* at p. 388.)

2. In *Paud v. Alco Plating Corp.* (1971) 21 Cal.App.3d 362 [98 Cal.Rptr. 706], the employer contended the arbitrator exceeded his jurisdiction by awarding vacation pay accruing after the expiration of a collective bargaining agreement. The court cited Code of Civil Procedure section 1280, subdivision (f), and pointed out there was evidence suggesting an oral or implied agreement between the employer and employees to extend or renew the written agreement, and the trial court properly referred that question to the arbitrator. The court said it was "up to [the arbitrator] to decide the extent to which the oral or implied

agreement to arbitrate. The only oral agreements enforceable under the statute are oral agreements to extend or renew an expired agreement, not oral agreements to modify an existing written agreement.

Warren contends the oral stipulation may be enforced because it was not an oral agreement to arbitrate, but was merely an oral agreement to use a particular arbitrator. It asserts that nothing in the law prevents such an oral agreement. The assertion is not correct. ■ It is well established that arbitration is a matter of contract, and the powers of the arbitrator derive from and cannot exceed the contract to arbitrate and the parties' submission to arbitration. (*American Home Assurance Co. v. Benowitz* (1991) 234 Cal.App.3d 192, 200 [285 Cal.Rptr. 626].) The same principle applies to the selection of an arbitrator. "A selection that is not authorized by the arbitration contract . . . confers no authority on the person selected." (*Id.* at pp. 200-201.) Accordingly, an agreement to utilize a particular arbitrator is no different from the balance of an agreement to arbitrate, and is ordinarily enforceable only if it is in writing.

*2. Oral modifications, like oral agreements to arbitrate, may be enforced only under limited circumstances demonstrating waiver, estoppel or agreement reflected in a written record, none of which are present in this case.*

■ Under certain limited circumstances—demonstrating waiver, estoppel or an oral agreement reflected in a written court or other record—courts permit exceptions to the statutory rule that only written agreements to arbitrate may be enforced. Thus a party may expressly waive rights under the statute that permits courts to enforce only written agreements. (*Law Offices of Ian Herzog v. Law Offices of Joseph M. Fredrics, supra*, 61 Cal.App.4th 672, 679-680 [oral stipulation in open court that the parties could be ordered

agreements extended the right to arbitration beyond the termination of the written agreement." (21 Cal.App.3d at p. 369.)

3. In *Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 545 [104 Cal.Rptr.2d 686], the court held that "a party's contractual duty to arbitrate disputes may survive termination of the agreement giving rise to that duty." The question was one of first impression, and one of the sources of guidance cited by the court was the statutory scheme recognizing that written agreements to arbitrate may be extended or renewed by oral or implied agreement. (*Ibid.*) The court upheld an arbitral award, concluding the arbitrators did not exceed their authority in extending the arbitration and fee provisions from the parties' terminated contract to future controversies. (87 Cal.App.4th at p. 537.) The court concluded the challenged provisions on future dispute resolution were "rationally drawn from the parties' agreement as interpreted in the arbitration proceeding," and "it is not irrational to extend its operation to controversies arising from the very award that interprets the agreement." (*Id.* at p. 544.)

to arbitration "expressly stat[ed] that no written stipulation was required"; under doctrines of waiver and judicial estoppel, party could not later contend that a written agreement was required].) In addition, a written agreement not yet signed may be enforceable if the parties orally agree to the proposed written terms with the intention that the oral agreement should thereupon become binding. (*Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 358 [72 Cal.Rptr.2d 598].)[6] Similarly, an oral settlement agreement with arbitration provisions may be formalized in open court. (See *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 830 fn. 8 [88 Cal.Rptr.2d 366, 982 P.2d 229]; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2001) ¶¶ 5:14 to 5:14.4, pp. 5-7 to 5-8 (rev. # 1, 2001).)

█ No such circumstances exist in this case. Moreover, no precedent exists for distinguishing between an oral agreement to arbitrate and an oral modification of a written agreement to arbitrate; neither may be enforced on a petition to compel arbitration. Cases involving the oral modification of a written arbitration agreement arise in the context of the confirmation of an arbitration award, not on a petition to compel arbitration, and are resolved on grounds of waiver and estoppel. (*Librascope Inc. v. Precision Lodge No. 1600, Internat. Assn. of Machinists* (1961) 189 Cal.App.2d 71, 75-76 [10 Cal.Rptr. 795] [upholding confirmation of an arbitration award, even though the award was not made within 10 days of the arbitration hearing as required by the collective bargaining agreement; "[t]he time fixed by the submission for making the award may be waived by the parties or they may be estopped by their action or inaction from claiming lapse of time as a termination of the arbiter's authority so that under the particular circumstances an award made after the expiration of the specified time may be valid"];[7] see *Bank of Coronado v. Shreve* (1921) 51 Cal.App. 353, 355-356 [196 P. 787] [party

[6] The court in *Banner Entertainment* specifically noted that "[w]e do not mean to suggest by this recitation of a basic principle of contract law that an enforceable agreement to arbitrate need not be in written form." (*Banner Entertainment, Inc. v. Superior Court, supra,* 62 Cal.App.4th at p. 358, fn. 6.) The critical issue was "whether a *proposed* written agreement is binding on a party who has not signed it." (*Ibid.*) In *Banner Entertainment,* the court concluded the proposed written agreement at issue was not an enforceable agreement to arbitrate. (*Id.* at p. 357.)

[7] The court found the party against whom the award was rendered had admitted by its conduct that the time for an award had been extended by mutual consent. (*Librascope Inc. v. Precision Lodge No. 1600, Internat. Assn. of Machinists, supra,* 189 Cal.App.2d at p. 76.) Other cases, like *Librascope,* contain general language to the effect that the parties may "alter the terms of the submission even after the original award is delivered," and "may agree on further action by the arbitrators as a continuation of the original submission," and may "enlarge the powers of the arbitrators." (E.g., *Jannis v. Ellis* (1957) 149 Cal.App.2d 751, 753 [308 P.2d 750].) These cases likewise arise on petitions to confirm the award, and in any event involve written agreements. (*Jannis v. Ellis, supra,* 149 Cal.App.2d at pp. 752-754

who participated in hearings after expiration of 30-day period allowed for decision under arbitration agreement was estopped from claiming award was void because not made within thirty days].) In short, if circumstances demonstrate waiver or estoppel, the parties may be held to an oral agreement to extend an arbitrator's authority to decide a controversy previously submitted. However, nothing in *Librascope* or any other case supports the proposition that a court may compel arbitration under an oral agreement, or an oral modification of a written agreement, in the absence of circumstances demonstrating waiver, estoppel or agreement reflected in a written record.[8]

In sum, we discern no basis in statute or case law, or in the circumstances of this case, for an exception to the statutory rule that oral agreements to arbitrate may not be enforced. There is no showing that Magness waived, or should be estopped from asserting, its rights under the statute permitting courts to enforce only written agreements to arbitrate. There is no transcript of the proceeding at which counsel are said to have orally stipulated to Judge Wisot's jurisdiction over all future disputes,[9] and no statement in Judge

---

[arbitrators' authority ends when award is delivered, unless the parties resubmit the matter to them; parties entered into a written stipulation requesting clarification of the award, and petition to confirm award as clarified was timely]; *Goossen v. Adair* (1960) 185 Cal.App.2d 810, 817 [8 Cal.Rptr. 855] [parties may by their voluntary act abandon one arbitration proceeding and proceed with another covering the subject matter embraced in the abandoned proceeding; agreement was in writing].)

[8]We recognize that policy considerations militate against permitting a party to renege on an agreement to use a particular arbitrator for future disputes after that arbitrator has indicated a current dispute will be resolved in the other party's favor. This is particularly so where, as here, the arbitrator has accumulated a great deal of information about complex documents and transactions that will also be necessary to the resolution of future disputes between the parties. However, the solution to that problem is a simple one, merely requiring the agreement on the arbitrator to be reduced to writing; lawyers do such things every day. Moreover, the requirement of a writing when parties agree on an arbitrator for future disputes is beneficial for arbitrators and litigants alike. It eliminates an area of potential dispute between the parties, and it avoids any possible appearance of self-interest that may arise when an arbitrator must decide on his or her own jurisdiction over further disputes. Finally, we are also aware that arbitration is intended to be more informal than a court proceeding. However, the underlying agreement to arbitrate, including the agreement upon an arbitrator (*American Home Assurance Co. v. Benowitz, supra*, 234 Cal.App.3d at pp. 200-201), does not partake of that informality, as it is the instrument by which parties waive a fundamental right. Changes in such agreements, even if they occur during the course of an arbitration, are no less significant.

[9]The oral stipulation was offered by counsel, not by the parties. In court proceedings, attorneys have authority to bind their clients at any stage of a proceeding by an agreement filed with the clerk or entered upon the minutes of the court, "and not otherwise . . . ." (Code Civ. Proc., § 283.) While our decision is not based on this ground, we see no reason why parties to an arbitration should be bound by their attorneys on the basis of a less than comparable showing, that is, on statements not transcribed in the record of the proceeding. Moreover, an arbitrator is not competent to testify in a subsequent civil proceeding as to any statement made at the prior proceeding. (Evid. Code, § 703.5.) Thus, it is difficult to discern

Wisot's final award purporting to reserve jurisdiction over future disputes.[10] We therefore conclude the trial court erred in refusing to enforce Magness's petition to compel arbitration before the AAA in accordance with the parties' written agreement.

## DISPOSITION

The order denying Magness's petition to compel arbitration before the American Arbitration Association is reversed, and the cause is remanded to the trial court with directions to vacate its order and enter a new order granting Magness's petition and denying Warren's petition. Magness is to recover its costs on appeal.

Cooper, P. J., and Rubin, J., concurred.

A petition for a rehearing was denied December 17, 2002, and the opinion was modified to read as printed above.

---

any legal basis upon which to admit the arbitrator's recollection regarding an oral stipulation between the parties in a prior proceeding as evidence that such a stipulation was entered.

[10]Warren contends Judge Wisot's June 6, 2000 order, in which he refers to the oral stipulation as a basis for his jurisdiction, was not merely an interim order but rather was "a new award in a new arbitration." Warren makes the same argument with respect to Judge Wisot's denial of Magness's motion to dismiss during the hearing on July 7, 2000. The record belies these claims. The order is a show cause order, and no award was ever issued. Indeed, the claim which precipitated the show cause order was withdrawn at the hearing. Warren also argues that Magness submitted the issue of the arbitrator's jurisdiction over future disputes to Judge Wisot, and is therefore bound by the arbitrator's decision. This argument fails for the same reason; no award was ever issued incorporating that jurisdictional finding.