Filed 7/10/14  Chan v. Delta Dental of California CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SUSAN CHAN, D.D.S., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DELTA DENTAL OF CALIFORNIA, <br><br> Defendant and Appellant. | A138402 <br><br> (San Francisco County <br> Super. Ct. No. CGC 12-523350) |

## I. INTRODUCTION

This is an appeal by defendant Delta Dental of California (Delta) from an order of the trial court denying its petition to compel arbitration of a contract dispute between it and plaintiff, Susan Chan D.D.S. (Dr. Chan).  The trial court found that there was no written and signed arbitration agreement between the parties, and hence denied Delta's petition.  Delta's appeal is based on the fact that there was a later form of provider agreement, albeit one not executed by Dr. Chan, which did contain an arbitration clause. The trial court rejected this contention and denied Delta's petition.  We agree and affirm the court's order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Dr. Chan is an endodontist who practices in Walnut Creek.  She obtained her Bachelors of Science degree from the University of California, Berkeley and her Dental Degree in Surgery from the University of California, Los Angeles.  She then served as a general dentist for the U.S. Air Force, and attained the rank of Captain.  She was honorably discharged from the Air Force in 1996.  After continuing to practice general

1

dentistry for a few years, she obtained a Masters Degree in Medical Science in Biology along with an endodontic certificate from the Harvard School of Dental Medicine in 2001. She then limited her practice to the endodontic specialty, a specialty involving root canal therapy, dental trauma, the treatment of cracked teeth, etc.

According to her complaint, Dr. Chan joined a "network" of dentists when she joined the "PMI network" in 2001. After PMI merged into Delta, Dr. Chan was thereafter a member of Delta, which she alleges to be "the largest dental health plan in California." When she joined the PMI network in 2001, she was allegedly "PMI's only networked endodontic specialty provider in East/Central Contra Costa County."

In 2005 Dr. Chan and Delta entered into a standard-form contract under which she would accept patients referred to her by Delta in exchange, of course, for compensation. A provision stated that the contract would continue in effect "for additional one-year terms" unless and until terminated by either party pursuant to its specific termination provisions. The contract was never terminated by either party. As conceded by Delta, the 2005 contract contained no arbitration provision. That contract also applied to only one specific location, i.e., the "location stated on the signature page" and not to any other offices or facilities used by Dr. Chan. Indeed, the contract specifically provided that the signatory dentist "desires to become a specialist dentist at the location stated on the signature page," which was Walnut Creek. Finally, the 2005 contract contained an "evergreen provision," i.e., it specifically provided that it would continue in effect for one-year terms unless one party or the other provided a notice of termination "at least 90 days prior to the end of the current term, or the Agreement is otherwise terminated as provided in Section 3.2."

Neither happened and, according to Dr. Chan's arguments, the 2005 contract is still in effect.

Under the 2005 contract, Delta referred patients to Dr. Chan either by direct referral from a general dentist in its network or based on an "assignment list" composed of general dentists who had links or relationships with Dr. Chan. That list was maintained by Delta's Professional Relations Department.

In 2006, Delta issued a new form of contract to its dental provider-members. It specifically provided, at section 7.4, that disputes arising thereunder were subject to arbitration under the commercial rules of the American Arbitration Association (AAA). However, the contract was, per Dr. Chan's counsel's phraseology, "location specific." Put another way, a signatory-participant dentist had to sign the 2006 version of the contract for each location where he or she worked. Dr. Chan adopted the 2006 contract for some other locations where she worked, but never signed such a contract covering her primary office in Walnut Creek.[1] Indeed, Delta's counsel stated at the hearing before the court on its motion to compel arbitration, that "we conced[ed] she didn't sign" the 2006 edition of the contract. This concession is confirmed by the 2006 edition itself, which states on its first page that the agreement is between Delta and "the undersigned dentist" and that its provisions are "to be effective on the Effective Date stated on the signature page . . . ." But the signature page of that contract tendered to the trial court by Delta had no dates, signatures, or any other writings.

Apparently, starting in 2009, a dispute arose between the parties regarding the referrals Delta was (or was not) making to Dr. Chan. Dr. Chan claimed they were being regularly reduced. She first tried to resolve this dispute by filing a claim under the provisions of Delta's dispute resolution procedure and Health and Safety Code section 1367, subdivision (h). Delta apparently rejected these claims, so Dr. Chan offered to mediate the dispute via AAA, but Delta did not agree. The parties then apparently agreed to have the dispute between them (i.e., over the reduced referrals to Dr. Chan) resolved via an arbitration before an AAA arbitrator. Such an arbitration commenced in September 2010. However, after several months of on-and-off arbitration, and before

_____

[1] In the "Introduction" to its opening brief, Delta effectively concedes this, stating: "The contract was 'location specific,' that is to say, if a dentist practiced at multiple locations, multiple copies of the contract had to be signed by the dentist and a representative of Delta, one for each location where the dentist worked. There is no evidence that this contract was signed by Dr. Chan for her primary location in Walnut Creek . . . ." And at oral argument before the trial court Delta's counsel conceded "that there is no signed 2006 contract."

3

any hearing on the merits before the arbitrator or any ruling from him, he was disqualified and the AAA found that he had a conflict of interest.

Dr. Chan then withdrew her arbitration claim and, on August 17, 2012, filed the present action in San Francisco Superior Court for breach of contract and unfair business practices. Among the alleged unfair business practices were improperly removing dentists from her referral list. Delta filed a petition seeking to, again, arbitrate their dispute. Dr. Chan opposed the petition and, on November 15, 2012, the trial court denied it without prejudice to Delta refiling it, on the ground that Delta had improperly included new alleged evidence in its reply to Dr. Chan's opposition to the petition to arbitrate. On December 14, 2012, Delta petitioned the court to, again, compel arbitration. Again, Dr. Chan opposed the motion, this time pointing out that the 2005 agreement between the parties did not contain a clause compelling arbitration.

On March 21, 2013, the trial court denied the motion, finding that "there was no signed written agreement to arbitrate (i.e., the 2006 version of the contract)." The court also specifically found that Delta had "not shown that Dr. Chan was estopped by her voluntary participation in arbitration with AAA" in so contending to the court.[2]

On April 16, 2013, Delta filed a timely notice of appeal.

### III. DISCUSSION

A. *Our Standard of Review.*

The parties begin by disagreeing regarding the applicable standard of review. Appellant Delta contends that it is de novo because the core issue is "whether an arbitration agreement applies to a controversy" and "[d]isputed extrinsic evidence not relevant to the interpretation of the agreement does not change the standard of review from de novo."

---

[2] This ruling was contrary to the trial court's tentative decision, in which it had concluded that Dr. Chan "knew of the existence of the 2006 contract (with its arbitration clause) and that she signed it." In its March 21 order to the contrary, the court found that (1) "there was no signed written agreement to arbitrate (i.e., the 2006 version of the contract", and (2) Dr. Chan was not "estopped by her voluntary participation in arbitration with AAA."

4

Dr. Chan disagrees, arguing that if "a party's motion to compel arbitration turns on conflicting evidence concerning whether the parties actually agreed to arbitrate, the question is one of fact, and is reviewed on appeal for substantial evidence."

Our colleagues in the Fourth District recently summarized when and how either a substantial evidence or de novo standard of review applies in a suit to compel arbitration. In *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60, they stated: " 'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]' [Citation.] Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning. [Citation.] Here, both the substantial evidence and de novo standards apply.

"Integrated's motion to compel Cade to arbitrate her claims is governed by the substantial evidence standard because the motion turned on conflicting evidence regarding whether Cade received and agreed to Integrated's arbitration policy. [Citations.]" (See also *Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 356-357 (*Banner*), and cases cited therein; *Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 652-653.)

Under this statement of the law, the standard of review applicable to this case is substantial evidence, i.e., whether there was substantial evidence that Dr. Chan did not agree to Delta's arbitration policy as articulated in the 2006 agreement form.

B. *The Applicable Law.*

Code of Civil Procedure section 1281 provides: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."

5

This court has summarized the principles applicable to a determination of whether there is a binding agreement to arbitrate. In *Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 683, we wrote: "Under both federal and state law, the threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate. The United States Supreme Court has stated that '. . . the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.' [Citation.] Similarly, under California law, ' "[a]rbitration is recognized as a matter of contract, and a party cannot be forced to arbitrate something in the absence of an agreement to do so." ' [Citations.] [¶] The question of whether the parties agreed to arbitrate is answered by applying state contract law even when it is alleged that the agreement is covered by the FAA. [Citations.]"

Two years later, one of our sister courts enlarged upon these principles. In *Banner, supra,* 62 Cal.App.4th 348, the court overturned a trial court decision which had granted a petition to compel arbitration on the ground that there was no substantial evidence to support the trial court's finding that the parties had agreed to arbitration. The *Banner* court wrote: "When it is clear, both from a provision that the proposed written contract would become operative *only* when signed by the parties as well as from any other evidence presented by the parties that both parties contemplated that acceptance of the contract's terms would be signified by signing it, the failure to sign the agreement means no binding contract was created. [Citations.]" (*Id.* at p. 358; see also *Magness Petroleum Co. v. Warren Resources of Cal., Inc.* (2002) 103 Cal.App.4th 901, 907.)

More recently, a panel of the Sixth District wrote: " 'The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement.' [Citations.] 'Although California has a strong policy favoring arbitration [citations], our courts also recognize that the right to pursue claims in a judicial forum is a substantial right and one not lightly to be deemed waived. [Citations.] Because the parties to an arbitration clause surrender this substantial right, the general policy favoring arbitration cannot replace an agreement to arbitrate.' [Citation.] Courts therefore recognize that the right to arbitration depends on a contract. 'Even the strong public policy in favor of

arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement.' [Citations.]" (*Young v. Horizon West, Inc*. (2013) 220 Cal.App.4th 1122, 1128 (*Young*); see also *Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1176.)

In view of the undisputed evidence that (1) the 2005 agreement contained no provision requiring arbitration of disputes between the parties, and (2) Dr. Chan never executed the 2006 agreement for Walnut Creek, there was clearly no contract between the parties requiring Dr. Chan to arbitrate her dispute with Delta.

C.  *Equitable Estoppel Does Not Require Dr. Chan to Arbitrate with Delta.*

Delta's alternative theory of why Dr. Chan was required to submit to binding arbitration is that she was equitably estopped from resisting that procedure.  Thus, Delta contends that Dr. Chan "sought the benefits of the 2006 agreement when she instituted binding arbitration against Delta" and that, therefore, under the doctrine of equitable estoppel, she may not now reject the application of that agreement to her.  (Capitalization omitted.)

"A valid claim for equitable estoppel requires: (a) a representation or concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it.  [Citation.] There can be no estoppel if one of these elements is missing." (*Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 584 (*Simmons*); see also *Young, supra,* 220 Cal.App.4th at p. 1131; *Gorlach v. Sports Club Co.* (2012) 209 Cal.App.4th 1497, 1505-1506 (*Gorlach*); *Brown v. Chiang* (2011) 198 Cal.App.4th 1203, 1227; *Futrell v. Payday California, Inc.* (2010) 190 Cal.App.4th 1419, 1436-1437; *Southern Cal. Edison Co. v. Public Utilities Com.* (2000) 85 Cal.App.4th 1086, 1110; *Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506, 1528.)

In its briefs to us, Delta overlooks this clear—and controlling—statement of the law.  Indeed, in a footnote in its reply brief, Delta contends than Dr. Chan's brief, by citing the elements comprising equitable estoppel set forth in *Gorlach* and *Young*,

7

"incorrectly" defines what that doctrine means. We think not; the *Young* decision specifically cited our Supreme Court's definition of that doctrine in *Simmons* and, based on those decisions and the facts of this case, the trial court was clearly correct in declining to find that Dr. Chan was equitably estopped from pursuing litigation rather than arbitration.

Delta argues Dr. Chan was equitably estopped by initially pursuing arbitration in her dispute with Delta over its alleged lessening of its referrals to her. But such a contention raises the inevitable question of what facts did Dr. Chan know and then conceal from a substantial entity such as Delta, and when and how was Delta actually and permissibly ignorant of the facts underlying the dispute between the parties? Nowhere in its briefs to us does Delta cite to any relevant fact that it did not know and Dr. Chan knew and concealed.

Delta relies heavily on two cases, which it contends support its argument that Dr. Chan's actions during the course of their dispute estopped her from pursuing litigation rather than arbitration.

The first is *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64 (*NORCAL*), another decision of this court. In that case, we reversed the trial court's denial of a petition to compel arbitration filed by an insurance company that had issued a medical malpractice insurance policy to a psychiatrist and his wife, both of whom had provided "couples therapy" to a man and the plaintiff, the man's wife. That "couples therapy" allegedly included sexual relations between the psychiatrist and the plaintiff. The latter then sued both the psychiatrist and his wife; they tendered defense of the case to NORCAL, their medical malpractice insurance carrier, because that policy covered any of the psychiatrist's " 'health care extenders' " or employees. (*Id.* at p. 77.) Although the psychiatrist's wife was not a named insured nor an employee or " 'health care extender[]' " for her husband, she alleged that she was an " 'additional insured.' " The trial court denied the petition to compel arbitration on the ground that there was insufficient evidence that the wife was a party to the malpractice insurance policy or had "accepted its benefits." (*Id.* at p. 71.) We reversed, holding that the respondent wife had

8

shown her "acceptance of the benefits of the policy" (*id.* at p. 66) and that her "agreement to the settlement of the malpractice case was affirmatively demonstrated by her signature." (*Id.* at p. 81; see also *id*. at pp. 68-69.)

*NORCAL* provides no support for Delta. First of all, nowhere in that opinion is the doctrine of equitable estoppel hinted at or even mentioned. Second, the holding in NORCAL clearly rested on the premise that the respondent, Ms. Newton, had signed the relevant agreement of the settlement. Dr. Chan *did not* sign the 2006 agreement, the one containing the arbitration clause.

The other authority Delta relies upon, *Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705 (*Metalclad*), is also inapposite. In that case, the parties to a contract involving a purchase of stock in a subsidiary of the seller company executed a "written agreement [which] included an arbitration clause" which covered " '[a]n*y* controversy or claim *arising out of or relating to this contract . . . .*' " (*Id.* at p. 1710.) The ensuing litigation did not, however, involve both of the parties to the original agreement. The defendant was the parent of the signatory subsidiary and, in the trial court, prevailed in its argument that it could not be required to arbitrate because it was not a signatory to the sale agreement, which contained an arbitration clause. But a panel of the Fourth District reversed, holding that the fact that the defendant-parent company was not a party to the arbitration agreement did not control, because that company was equitably estopped from avoiding arbitration because its subsidiary *was* a signatory party. The court held: "Metalclad agreed to arbitration in the underlying written contract but now, in effect, seeks the benefit of that contract in the form of damages from Ventana while avoiding its arbitration provision. Estoppel prevents this." (*Id.* at p. 1717.)

Once again, this authority does not apply here because of the absence of a signed, written agreement containing an arbitration clause. As the same court that decided *Metalclad* said a few years later: "[N]othing we said in *Metalclad* purports to excuse the statutory requirement that a party seeking to compel arbitration must affirmatively allege the existence of a written arbitration agreement." (*Brodke v. Alphatec Spine, Inc.* (2008)

9

160 Cal.App.4th 1569, 1575.)  To which words, we would add: "meaning a written agreement signed by the party of whom arbitration is demanded."

We conclude by quoting from the trial court at the conclusion of the hearing at which it denied Delta's demand for arbitration:  "[Delta] has admitted that there is no signed, written agreement and is seeking to compel arbitration on an estoppel theory.  [¶] Even if that were possible as a basis to compel arbitration, I find that [Delta] has not shown that Dr. Chan was estopped.  [¶] The fact that Dr. Chan voluntarily availed herself of the right to mediation or arbitration does not mean there was a binding agreement to arbitrate where under all the evidence that's before me in this case there's no evidence she ever signed the 2006 contract."

We could not have summed up the proper result in this case better than that.

## IV. DISPOSITION

The order appealed from is affirmed.

_____
Kline, P.J.

We concur:

_____
Richman, J.

_____
Brick, J.*

\* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.